**STATE of Missouri, Respondent,**

v.

**Lemoine CARTER, Appellant.**

No. 78625.

Supreme Court of Missouri,
En Banc.

Oct. 21, 1997.

As Modified on Denial of Rehearing
Nov. 25, 1997.

**552**

Laura G. Martin, Asst. Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro, Asst. Atty. Gen., Jefferson City, for Respondent.

HOLSTEIN, Judge.

Lemoine Carter was convicted of two counts of first degree murder and two counts of armed criminal action. After the jury was unable to agree on sentencing, the circuit court imposed a sentence of death on each count of murder and life on each count of armed criminal action. Carter filed a motion for post-conviction relief pursuant to Rule 29.15. Without an evidentiary hearing, the circuit court denied post-conviction relief. This Court has jurisdiction of the appeals. Mo. Const. art. V, sec. 3.

### I.

Carter does not dispute the sufficiency of the evidence to sustain the convictions. Viewed in a light most favorable to the verdicts, the facts are as follows:

Carter lived in Kansas City with his wife, Laquitta. Carter was employed at Kenny's Newsroom, a restaurant and bar in Kansas City, Missouri. On April 17, 1994, Carter's wife drove him to Kenny's Newsroom to play pool. While there, a man Carter did not know challenged Carter to a game of pool. Carter accepted the challenge and placed $20 on the pool table. A bystander, Ralph Serrano, took the $20 and walked away. When Carter asked for his money back, Serrano pulled a knife on Carter. Carter retreated to the downstairs kitchen to retrieve a larger knife. On returning, Serrano still refused to give up the money. A bartender broke up the dispute, and Carter returned downstairs. A woman with Serrano, LeVonn Baker–Howard, returned the $20 to Carter. Carter then left Kenny's but returned shortly to retrieve keys and cigarettes he had left inside. While there, Carter had another drink. After the drink, Carter again left Kenny's with his brother-in-law, Rodney Temple.

Carter and Temple left in Temple's 1980 two-toned blue Pontiac station wagon. The two headed north on Broadway. Approximately three blocks from Kenny's, Carter told Temple to pull into an alley so Carter could urinate. Temple and Carter pulled into an alley just south of the intersection of Armour and Broadway. By this time, Carter had already taken a .40 caliber handgun from beneath the passenger seat in Temple's car and put it in his waistband. Once he was out of the car, Carter saw that Ralph Serrano and LeVonn Baker–Howard were also in the parking lot. Carter and the two victims argued. Carter then shot one of the victims, paused for four or five seconds, and then shot the other victim. One witness heard Baker–Howard scream out from the parking lot, "You dirty son-of-a-bitch" after the first shots were fired. A witness that lived on the first floor of an apartment building went to the window and saw Serrano and Baker–Howard lying in the parking lot with Carter standing over them. Other witnesses saw the same thing from across the street. From across the street, one of the witnesses saw Carter lean over and fire at one of the bodies on the ground. Carter then walked slowly away and got into the passenger side of Temple's station wagon, which then drove out of the parking lot without its lights on. Carter and Temple then headed east on Armour.

Kansas City police officer Henry Stivers was near the intersection of Armour and Broadway when he heard gunshots. An older model, two-tone blue station wagon passed Officer Stivers' car. Shortly thereafter, Stivers received information that a blue car was involved in the shooting. Officer Stivers immediately tried to find the station wagon that

had just passed but was unable to do so. He then returned to the location where he had heard the shots.

There he found Serrano and Baker–Howard. Serrano had suffered a gunshot wound to his left upper lip. This wound showed evidence of powder burns. The projectile fragmented in Serrano's face, causing extensive soft tissue injury to the face and the bony structures of the face and jaw. Although he was six feet tall, the trajectory of the wound was from the upper front right side of Serrano's face through the lower left back side of Serrano's head. Serrano also suffered a gunshot wound through the upper part of his right arm. The wound to Serrano's face caused extensive bleeding that seeped into his airways, causing him to die of suffocation.

Carter shot Baker–Howard three times. One shot entered her right cheek and exited behind her left ear. Another shot grazed the left side of her head. The third shot went through her right shoulder. Baker–Howard died as a result of the wound to the right cheek, which partially transected her brain stem.

In the course of investigating the murders, the police learned of the April 17 altercation at Kenny's Newsroom. On April 18, 1994, the police interviewed Carter at police headquarters. At that time, Carter asserted that he walked home the night of April 17th and did not have anything to do with the murders. He did, however, admit to owning a .40 caliber Ruger handgun. He claimed it had been stolen, although he had never reported the theft.

On April 21, 1994, the police went to Temple's house and found his 1980 two-tone blue Pontiac station wagon. Someone had tried to strip the paint from the vehicle and had removed the luggage rack, wind screen and pinstriping from this car.

Police arrested Carter on April 22, 1994. At that time, Carter gave a videotaped confession to the murders. In his statement, Carter admitted to shooting Serrano and Baker–Howard but asserted that he did so in self-defense. He stated that after the shooting, he threw the .40 caliber handgun he used into the lake in Blue Valley Park.

The state charged Carter with two counts of first degree murder and two counts of armed criminal action. At trial, Carter testified that he did not shoot either victim. He testified that after he left Kenny's Newsroom on the night of the murders, he walked straight home. On September 21, 1995, the jury found Carter guilty of all counts. During the penalty phase, the state presented evidence of two aggravating circumstances as to Serrano's murder and three aggravating circumstances as to Baker–Howard's murder. Carter presented evidence of three mitigating circumstances as to each murder. On September 22, 1995, the jury announced that it was unable to decide upon punishment. On October 16, 1995, Carter filed a motion for new trial, which was overruled. On December 15, 1995, Carter appeared for sentencing. Among other evidence presented at that hearing was a letter from a sister of Serrano indicating the impact of Serrano's death on members of the family and also stating that members of the family desired that Carter be given the death penalty. Carter was sentenced to death for each murder. He thereafter filed a pro se Rule 29.15 motion. After appointment of counsel, an amended motion was filed. In August 1996, the circuit court overruled all of Carter's Rule 29.15 claims and dismissed the motion without granting a hearing on any of the issues raised. These appeals followed.

## II.

Carter argues that the circuit court erred in refusing to grant an evidentiary hearing on the numerous claims of ineffective assistance of counsel raised in his Rule 29.15 motion. No evidentiary hearing is required if "the motion and the file and records of the case conclusively show that the movant is entitled to no relief." Rule 29.15(h). Whether or not a hearing was held, the findings and conclusions of the post-conviction court cannot be overturned unless they are "clearly erroneous." Rule 29.15(k).

In order for this Court to order an evidentiary hearing, the motion must meet three requirements: (1) the motion must al-

lege facts, not conclusions, warranting relief; (2) the facts alleged must raise matters not refuted by the files and records in the case; and (3) the matters complained of must have resulted in prejudice to the movant. *White v. State*, 939 S.W.2d 887, 893 (Mo. banc 1997) (quoting *State v. Starks*, 856 S.W.2d 334, 336 (Mo. banc 1993)). Therefore, to obtain an evidentiary hearing on claims of ineffective assistance of counsel, the movant must allege facts, not refuted by the record, showing (1) that counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney and (2) that he was thereby prejudiced. *White*, 939 S.W.2d at 893. To show the required prejudice, the facts alleged must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). Because none of Carter's allegations satisfy this standard, his motion was properly overruled without an evidentiary hearing.

### A.

■ Carter alleges in his brief that one of his two trial counsel was ineffective "because he was drinking and was drunk during trial preparation and the trial itself." However, Carter's Rule 29.15 motion alleges only the "consumption of alcohol" but never claims trial counsel was intoxicated. These allegations fall short of alleging intoxication at any time during or prior to trial. Moreover, Carter makes no specific factual allegations of how counsel's alleged alcohol consumption affected his performance. Carter only makes the sweeping conclusion that counsel's consumption of alcohol caused "every instance of ineffective assistance of counsel assertedd [sic] in this motion." A bare allegation that counsel was less than a teetotaler leading up to or during a trial without asserting specific facts amounting to incompetent representation asserts neither ineffective assistance of counsel nor prejudice.

### B.

■ Carter also alleges that instead of his primary trial counsel adequately preparing for trial, he relied on his friendship with the prosecutor, believing that friendship would settle the case. Carter bases this on alleged statements by counsel that this case would "work out" and on allegations that counsel did not meet frequently enough with Carter. Even if true, the claims are meaningless absent specific allegations showing what additional preparation or meetings with his lawyer would have accomplished. This claim is inadequately asserted to justify a hearing.

### C.

■ Carter next claims that his other trial counsel, Kimberly Kellogg, was ineffective for failing to adequately prepare for the penalty phase of his trial. Among other unspecified distractions, Carter alleges that "Kellogg spent an inordinate amount of time prior to trial as an 'expert commentator' for News Channel 4's coverage of the O.J. Simpson trial; time which should have been spent preparing for [Carter's] trial." However, Carter fails to allege a single fact showing what counsel failed to do because she was commenting on the Simpson trial. He merely concludes that if the mitigation case had been properly prepared, "the jury would have voted to sentence [Carter] to life without parole." Carter also alleges that Kellogg should have met with him more frequently. However, he does not allege any information that might have developed from those meetings that would have a reasonable probability of changing the outcome of his case. The motion court correctly denied the claim without a hearing.

### D.

■ Carter alleged that his counsel were ineffective for not presenting "a full view" of Carter's life. His counsel called Carter's mother, his wife, his aunt, and his sister. The testimony together showed a picture of a quiet child who grew up in poverty. The testimony showed the debilitating effect that his father's leaving him had on him. As an adult, the testimony showed a loving husband, uncle and son who worked and spent time with his family. Carter alleges that counsel should have presented more evidence of the depth of the poverty Carter experi-

enced as a child. He further argues that counsel should have expanded on the effect Carter's father's leaving. This evidence, of course, would be cumulative. It is not ineffective assistance of counsel to fail to put on cumulative evidence. *State v. Shurn,* 866 S.W.2d 447, 472 (Mo. banc 1993), cert. denied, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

 Carter also claims that counsel were ineffective for failing to introduce evidence that he had been abused by family members and other young people as a child and by his wife as an adult and that he was addicted to alcohol and illegal drugs. However, this evidence would have contradicted the obvious strategy of presenting Carter as a law abiding, peaceful, hardworking family man. Carter cannot now plead ineffective assistance alleging that a different strategy would have worked better. Furthermore, there is not a reasonable probability that the omitted evidence would have changed the result of Carter's sentencing. See *Strickland,* 466 U.S. at 699–700, 104 S.Ct. at 2070–71. This claim was properly denied without a hearing.

### E.

 Carter also claims that his counsel were ineffective in failing to investigate his alleged mental illness. Carter alleges that an investigation would have revealed that Carter "suffered from post-traumatic stress disorder, dsythmia [sic], chemical dependence, battered spouse syndrome, and brain damage." To prevail on such a claim, Carter "must show the existence of a factual basis indicating a questionable mental condition that should have caused his attorney to initiate an independent investigation of [Carter's] mental state." *State v. Richardson,* 923 S.W.2d 301, 328 (Mo. banc), cert. denied, — U.S. —, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996). Carter's motion stops short of asserting that any facts were communicated to counsel that should have alerted them to the questionable mental conditions. Carter alleges only that his "tumultuous and abusive life history" should have put counsel on notice of his mental instability. As stated above, however, the

factual basis must call Carter's current state of mental health into question. This Court cannot say as a matter of law that it is ineffective assistance of counsel to fail to obtain a mental examination for a defendant who exhibits no signs of mental illness but has had a tumultuous and impoverished childhood. As in Strickland, the decision to not request a psychiatric report is well within the range of professionally reasonable judgment. *Strickland,* 466 U.S. at 699, 104 S.Ct. at 2070–71.

### F.

 Carter makes two claims of error relating to autopsies of the victims. The autopsies were performed by Dr. Brij Mitruka. However, some time before Carter's trial, Mitruka left the Jackson County medical examiner's office. Deputy Medical Examiner Michael Berkland testified at trial concerning the autopsy reports. Carter's post-conviction motion alleges that the state failed to disclose evidence of incompetence of Dr. Mitruka in violation of his discovery request. The motion also alleges that his counsel were ineffective for failing to discover, investigate and present evidence of Dr. Mitruka's incompetence. The state's alleged failure to comply with Carter's discovery request is a claim of trial error, which is outside the scope of a Rule 29.15 motion. See *Schneider v. State,* 787 S.W.2d 718, 721 (Mo. banc), cert. denied, 498 U.S. 882, 111 S.Ct. 231, 112 L.Ed.2d 186 (1990); *Burgin v. State,* 847 S.W.2d 836, 839 (Mo.App.1992), and *State v. White,* 790 S.W.2d 467, 474–75 (Mo.App.1990). Claims of trial error will only be considered in a Rule 29.15 motion where fundamental fairness requires, and then, only in rare and exceptional circumstances. *Schneider,* 787 S.W.2d at 721.

Allegations of Dr. Mitruka's incompetence were published in newspapers a year before Carter's trial, and Carter admits this information was public knowledge. However, even if the state did err in not turning over information regarding Dr. Mitruka, Carter does not allege any rare or exceptional circumstances. Neither does he allege any facts showing how this information had any

reasonable probability of changing the outcome of the guilt or the penalty phase.

■ He further complains that the trial court failed to make the required findings of fact and conclusions of law in denying his claim that counsel were ineffective regarding the investigation and presentation of evidence that Dr. Mitruka was incompetent. Even if Carter's counsel had fully investigated the claims of Dr. Mitruka's incompetence, it would not have been ineffective assistance to not present this information. Mitruka did not testify, and the only thing disclosed by his reports was the cause of death and the place of entry and exit of the wounds. Neither at trial nor in his Rule 29.15 motion did Carter dispute the cause of death or claim to have expert testimony that would have contradicted Mitruka's reports regarding the location of the entry and exit wounds. As a matter of law, Carter is entitled to no relief on this claim. An isolated instance of the post-conviction court failing to address a claim that is deficient as a matter of law does not justify remand. *White*, 939 S.W.2d at 903.

### G.

Carter's post-conviction motion asserts that "counsel was ineffective in failing to investigate the conclusions of Dr. Michael Berkland and to present evidence to rebut his testimony that Ralph Serrano was shot while kneeling." During the penalty phase, Dr. Berkland, the deputy county medical examiner, opined that the position of Serrano's body, found with the knees bent underneath it, back arched, and body facing upward, together with the downward trajectory of the bullet was "consistent with a shooting wherein [the victim] was on his knees." Defense counsel cross-examined Dr. Berkland, who admitted that Serrano may have fallen to his knees after being shot.

The post-conviction motion fails to allege any facts that could have been developed by additional investigation that would have contradicted Dr. Berkland or how Dr. Berkland's opinion would have been further modified if the right question were propounded on cross-examination. Worded differently, there are no allegations as to what additional investigation or cross-examination would have disclosed. In the absence of such allegations, the pleadings fail to assert either inadequate performance by counsel or prejudice. *State v. Twenter*, 818 S.W.2d 628, 636 (Mo. banc 1991).

### H.

■ Carter next alleges that counsel were ineffective "for failing to extensively voir dire" a juror who was "a self-professed avid news watcher." However, the juror stated that he did not remember reading, hearing or viewing anything about Carter's case prior to trial. Carter claims in his brief that this juror was prejudiced by "daily viewing of the Simpson trial" but the juror in question never mentioned the Simpson trial. Carter claims that a proper voir dire "would have revealed his prejudicial biases gained as a result of watching too much television." However, Carter fails to allege any facts showing how television viewing biased this juror. Television viewing could easily prejudice a person against the state as well as against a defendant in a criminal trial. Speculation that a more extensive query would reveal some unspecified prejudice from excessive news watching by a potential juror is too vague to establish inadequate performance of counsel or prejudice to the movant. Because Carter failed to allege sufficient facts regarding this claim, it was correctly denied without a hearing.

### I.

■ Carter also alleges that counsel were ineffective in failing to object to the state's use of its peremptory challenges to strike persons who express some reservations about recommending the death penalty. The United States Supreme Court has held that persons having some reservations about the death penalty cannot be challenged for cause if the juror is willing to consider the death penalty. *Gray v. Mississippi*, 481 U.S. 648, 657–59, 107 S.Ct. 2045, 2050–52, 95 L.Ed.2d 622 (1987). However, that does not prohibit the state from using peremptory strikes to remove jurors who have reservations regarding the death penalty. The motion court did

not clearly err in dismissing this claim without a hearing.

## III.

During the penalty phase deliberation, the jury sent the judge the following note:

"A member of the jury has changed his mind on his decision yesterday on the guilt of the defendant. Please advise. /s/[Jury Foreperson]." The trial court responded with the following note:

"The first stage has been completed. The verdict published, the jury polled and the verdict accepted by the court. The jury is now to deliberate upon its verdict in this stage pursuant to Instructions 1, 2 and 23–32. /s/ Judge Shinn." Carter claims that the trial court erred in not declaring a mistrial or polling the jury immediately after the note was sent out, and counsel were ineffective for failing to ask the court to poll the jury.

■ Rule 29.01(d) provides: "When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged." Federal Crim. P. Rule 31(d) is identical to our Rule 29.01(d). Construing the federal rule, it has been held that once an unambiguous, unanimous verdict is returned, the jury polled, and the verdict recorded, the verdict is no longer impeachable for lack of unanimity simply because a juror had a later change of mind. *United States v. Williams,* 990 F.2d 507, 512–13 (9th Cir.), cert. denied, 510 U.S. 926, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993); see also *United States v. Vannelli,* 595 F.2d 402, 407 (8th Cir.1979), and *United States v. Schroeder,* 433 F.2d 846, 851 (8th Cir.1970), cert. denied, 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971). Missouri law has long held that a juror may not impeach a unanimous, unambiguous verdict after it is rendered. *Amrine v. State,* 785 S.W.2d 531, 535–36 (Mo. banc); cert. denied, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). We decline Carter's invitation to overrule that well-settled rule of law.

■ Moreover, the verdict of guilt was unambiguous and no ambiguity was introduced into the recorded verdict by the note sent out to the judge during the penalty phase deliberations. The trial judge committed no error, plain or otherwise. Counsel were not ineffective in failing to make a meritless request that the jury be repolled on the issue of guilt.

## IV.

Carter claims that the motion court clearly erred in denying Carter's motion for change of judge and in denying Carter's Rule 29.15 claim on this issue without a hearing. Additionally, Carter claims that his counsel were ineffective for failing to move for recusal of the trial judge. Carter claims that the trial judge slept during portions of his trial and the judge was "threatening and intimidating" with a venireperson who had a hardship problem.

■ Generally, a disqualifying bias or prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from his or her participation in the case. *State v. Hunter,* 840 S.W.2d 850, 866 (Mo. banc 1992), cert. denied, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993). Recusal is also required where there is "a fact from which prejudgment of some evidentiary issue in the case by the judge may be inferred or facts indicating the judge considered some evidence properly in the case for an illegitimate purpose." *Haynes v. State,* 937 S.W.2d 199, 204 (Mo. banc 1996).

Even if Carter could produce witnesses that would testify that they saw the judge sleeping, Carter points to no specific instance where the trial court made an inappropriate ruling or failed to make any ruling at all on an objection or other matter due to his alleged sleeping.

■ The incident with the venireperson to which Carter refers included an exchange where the venireperson indicated she had a job interview at 3 o'clock the following day, which the judge asked her to rearrange, leading to the following dialogue:

[VENIREPERSON]: What if I can't get the job interview changed?

THE COURT: You're under court order to be here, and so we will send a sheriff out to find you. In other words, you didn't bring this out in the hardships, so as far as you're concerned you're on the jury until we tell you otherwise. We will try to work with you, but that's the situation.

[VENIREPERSON]: Thank you (crying).

The judge ultimately excused the venireperson for hardship.

Carter does not allege any specific prejudice that resulted from this exchange. Any prejudice that particular venireperson may have harbored was cured by her being excused for hardship. Carter asserts that this exchange, "Caused the jurors to feel intimidated and obligated to do whatever the judge wanted." However, the judge's instructions made clear that what he "wanted" was for the jury to decide the case on the evidence presented and applicable law. To convince jurors to do this is not an expression of bias against a defendant.

The motion court was correct in denying his claim without a hearing because Carter does not allege facts that show either error or prejudice resulted from the alleged sleeping. Neither does he assert facts showing any disqualifying bias in the exchange between the judge and the venireperson. In addition, the facts alleged fail to show that counsel were ineffective in failing to make a meritless motion for recusal of the judge.

## V.

Carter also seeks plain error review of the trial court's failure to sua sponte declare a mistrial due to allegedly improper penalty phase arguments by the state. Carter further claims that the motion court clearly erred in denying without a hearing his allegation that counsel were ineffective in failing to object to these allegedly improper arguments.

 It is constitutionally impermissible to rest a death sentence on factors wholly irrelevant to legitimate sentencing concerns. *Caldwell v. Mississippi*, 472 U.S. 320, 332, 105 S.Ct. 2633, 2641, 86 L.Ed.2d 231 (1985).

However, "[b]oth parties have wide latitude in arguing during the penalty phase of a first-degree murder case." *Shurn*, 866 S.W.2d at 463. Errors committed in closing argument do not justify relief under the plain error rule unless they are determined to have a decisive effect on the jury. *State v. Kreutzer*, 928 S.W.2d 854, 875 (Mo. banc 1996). We have reviewed each claim for plain error and found that the arguments in each case were supported by the evidence or reasonable inferences from the evidence and at no point sought the jury to consider inappropriate factors in determining punishment. It is sufficient to say here that none of the arguments rose to the level of plain error. In addition, counsel were not ineffective in failing to object to permissible argument. An extended discussion of the specific arguments made would be of no precedential value.

## VI.

During the penalty phase, the trial court submitted to the jury Instructions 23 and 25, patterned after MAI–CR3d 313.40, and Instruction 26, patterned after MAI–CR3d 313.41. The jury was unable to reach a verdict in the penalty phase. With regard to the Serrano murder, the trial court found the following aggravating circumstances beyond a reasonable doubt: (1) The murder of Serrano involved depravity of mind and as a result thereof, the murder was outrageously vile, horrible and inhuman because Carter inflicted physical pain or emotional suffering on the victim in the manner in which he was killed; and (2) Carter killed Serrano as part of defendant's plan to kill more than one person, thereby exhibiting a callous disregard for the sanctity of human life.

Regarding the murder of Baker–Howard, the judge found the following aggravating circumstances beyond a reasonable doubt: (1) the murder of Baker–Howard was committed while Carter was engaged in the commission of another unlawful homicide; (2) the murder of Baker–Howard involved depravity of mind and as a result thereof, the murder was outrageously vile, horrible and inhuman because Carter killed Baker–Howard as part of his plan to kill more than one person; and

(3) the killing of Baker–Howard was to dispose of a potential witness to the murder of Serrano.

Carter makes a series of related attacks on the aggravating circumstances instructions given the jury, insisting that it was plain error for the trial court to give the instructions and ineffective assistance of counsel not to object. He claims the instructions are vague, duplicative, and not supported by the evidence. It is sufficient to say here that all of the aggravating factor instructions were supported by the evidence previously recounted. Identical claims of constitutional vagueness and duplication have been made and rejected in the recent past. *State v. Harris*, 870 S.W.2d 798, 813 (Mo. banc), cert. denied, 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994); *State v. Brown*, 902 S.W.2d 278, 293 (Mo. banc), cert. denied, — U.S. —, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995); *State v. Ramsey*, 864 S.W.2d 320, 337 (Mo. banc 1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994). Moreover, the jury did not sentence defendant. Claims of error regarding these instructions are without merit.

## VII.

■ Carter claims that the trial court plainly erred by including a nonstatutory aggravating circumstance in Instruction 26 relating to the Baker–Howard murder. Patterned after MAI–CR3d 313.41(b), Instruction 26 allowed the jury to consider whether Baker–Howard "was killed as a result of her being a potential witness to the murder of Ralph Serrano." Prior to 1993, RSMo. Sec. 565.032 allowed a judge or jury to consider "[a]ny mitigating or aggravating circumstance otherwise authorized by law and supported by the evidence." Sec. 565.032.1(3), RSMo 1986. In 1993, the legislature deleted subdivision 3. However, the statute continues to make provision for consideration of the aggravating factor of whether the victim "was a witness or potential witness in any past or pending investi-

gation or past or pending prosecution, and was killed as a result of his status as a witness or potential witness." Sec. 565.032.2(12).[1] Because the instruction did not hypothesize a past or pending investigation or prosecution, Carter claims the trial court plainly erred in submitting an instruction allowing the jury to consider whether Baker–Howard was killed because she was a potential witness. He further claims the trial judge erred in finding that Baker–Howard was killed as part of Carter's plan to dispose of a potential witness. Because no objection was made at trial, the Court reviews only for plain error.

Under the present Missouri capital sentencing scheme, the sentencer, whether a judge or jury, must first find that one or more statutory aggravating circumstances exist beyond a reasonable doubt. Sec. 565.032.1(1). Once that finding is made, the sentencer then determines if the evidence as a whole justifies a death sentence and, in performing that function, the sentencer may consider any evidence it determines to be aggravating or mitigating. Sec. 565.032.1(2).

■ Here, the trial judge sentenced defendant, not the jury. The trial judge found two statutory aggravating circumstances. It was within the trial judge's prerogative to make an additional finding of a nonstatutory aggravating factor in determining that a death sentence was justified. A death sentence will be affirmed based on the finding of one valid statutory aggravating circumstance, regardless of the failure of another. *State v. Tokar*, 918 S.W.2d 753, 772 (Mo. banc), cert. denied, — U.S. —, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996).

■ Like the judge, the jury could have found either or both of two valid statutory aggravating factors and, in addition, the nonstatutory aggravating factor. All three factors were supported by the evidence. If it is not error for a sentencer to find that both statutory and nonstatutory aggravating fac-

---

1. In this case, the statutory aggravator could have been submitted. An investigation need not be pending at the time of a murder. It is sufficient that a reasonable juror may infer that the defendant foresaw an investigation and killed the victim to forestall that development. *State v. Copeland*, 928 S.W.2d 828, 850 (Mo. banc 1996) (citing *State v. Brown*, 902 S.W.2d 278, 294 (Mo. banc), *cert. denied*, — U.S. —, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995)).

tors together justify a death penalty, it follows that giving an instruction permitting the finding of both a statutory and nonstatutory factors is not plain error. Moreover, the jury in this case was unable to agree on punishment, and the trial judge sentenced the defendant. This made any claim of manifest injustice due to the format of a jury instruction given during the punishment phase pure speculation. Neither the giving of Instruction 26 nor the trial judge's finding of a nonstatutory aggravating factor amounts to plain error.

## VIII.

Carter claims the trial court plainly erred in allowing him to wear jail clothes during the trial. Carter also claims the motion court clearly erred in denying his claim without a hearing that his counsel were ineffective for advising Carter to wear his jail clothes during trial. The state cannot compel an accused to stand trial before a jury while dressed in identifiable prison clothes. *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1696–97, 48 L.Ed.2d 126 (1976). However, Carter and his attorneys established a record regarding their agreement that wearing jail clothes was part of a trial strategy. The trial judge informed Carter that he had the right to a change of clothes every day, if he wanted to. Notwithstanding that advice, Carter and his counsel insisted on wearing the jail clothes as part of a strategy to build credibility with the jury. In fact, Carter's counsel addressed Carter's appearance in voir dire. He explained that Carter was still in prison because he was too poor to afford bail, not because he was a dangerous person. Counsel could reasonably believe that by talking about Carter's attire and indigency, he could build credibility and perhaps evoke sympathy for his client. Counsel is not ineffective because a trial strategy apparently failed. *Harris*, 870 S.W.2d at 816. Because the record refutes this claim of ineffective assistance of counsel, the motion court did not clearly err in denying Carter a hearing on that claim.

## IX.

Carter claims that the trial court erred in overruling his motion to suppress his video-

taped statement to the police. Carter bases a claim of coercion on two allegedly false promises of leniency made by the police.

Review of a trial court's ruling on a motion to suppress is limited to determining whether the evidence is sufficient to support the trial court's ruling. *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). In reviewing the trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising therefrom are to be viewed in a light most favorable to the ruling of the trial court. *State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. banc 1992).

Both detectives who questioned Carter on April 22, 1994, when he gave his statement to the police, testified they made no promises or threats to Carter. Carter contended otherwise, though, claiming they each had made a promise of leniency. The trial court was entitled to believe the officers and disbelieve Carter. *State v. Feltrop*, 803 S.W.2d 1, 12 (Mo. banc), cert. denied, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). This claim is denied.

## X.

Carter claims that the trial court plainly erred in allowing the state to present a letter from a member of the Serrano family at his sentencing hearing. The letter included a request that Carter be sentenced to death. This letter was never presented to the jury. Victim impact testimony focusing on the victim and the crime's impact on survivors is admissible. *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991); Sec. 565.030.4, RSMo. Unquestionably, the letter contained relevant statements regarding the impact of the murder of Serrano on his survivors. The trial judge determined the sentence. Assuming that the recommendations of the death penalty found in the letter were inadmissible, this Court presumes that inadmissible evidence is neither prejudicial nor fundamentally unfair in court-tried matters. The reason is that judges are presumed to not consider improper evidence at sentencing. *State v. Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997). The

admission of the letter at the sentencing here was not plain error.

## XI.

Carter claims the trial court erred in allowing, over objection, the state to introduce a .40 caliber handgun that was not the murder weapon. A trial court has broad discretion in admitting demonstrative evidence. *State v. Silvey,* 894 S.W.2d 662, 669 (Mo. banc 1995). A weapon like one used to commit a crime is admissible (1) if the evidence establishes that it is similar to the one used to commit the crime, (2) there is no likelihood of deception, (3) the defendant has ample opportunity to cross-examine regarding the demonstrative weapon, and (4) the demonstration is probative of a material issue in the case. *Id.* at 667–68.

The gun introduced by the state in this case was the same model as that owned by Carter. The state emphasized that the demonstrative gun was not the murder weapon. Carter had ample opportunity to cross-examine the witness regarding the demonstrative weapon. The state used the exhibit to show how shell casings would eject from the weapon. This evidence was relevant to explain where the shooter would have to stand while firing the weapon for the shell casings to land as far apart as they did. The state argued that the distance between the casings meant that Carter had moved to another spot to shoot the second victim, allowing time for cool reflection. The demonstrative exhibit was relevant and fairly represented the conditions it was offered to show. The trial court did not err in overruling Carter's objection.

## XII.

Carter claims the trial court plainly erred in not instructing the jury to write down any aggravators they found. He also claims plain error in that the court failed to give the jury verdict forms "which would establish why the jury could not agree upon punishment." A similar argument was addressed and rejected in *State v. Griffin,* 756 S.W.2d 475, 488 (Mo. banc 1988), cert. denied, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). Carter did not offer any instructions at trial. Even on appeal he has not supplied us with the form of instructions that should have been offered. This claim of plain error is denied.

Carter also argues that the finding of aggravating circumstances by the trial judge violates his right against double jeopardy because "the court may consider an aggravator which the jury did not find." However, a jury's verdict is not binding until it is accepted by the court; therefore, "there is no merit in the defendant's claim that he was 'acquitted' of the statutory aggravating circumstances." *State v. Lashley,* 667 S.W.2d 712, 715 (Mo. banc), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

## XIII.

Carter claims that the trial court plainly erred in overruling his request to submit a questionnaire to the venire panel. Carter also claims that the motion court clearly erred in finding that his counsel were not ineffective in failing to preserve this question for appeal. Control of voir dire is within the discretion of the trial court and such discretion will not be disturbed absent a clear showing of an abuse of discretion. *State v. Storey,* 901 S.W.2d 886, 892 (Mo. banc 1995). The trial court refused Carter's request to submit a questionnaire because, in the trial judge's experience, such questionnaires did not expedite voir dire, caused more problems than they solved, and were too much paper. Carter cites no authority demonstrating manifest abuse of discretion in the trial court's decision to not submit a questionnaire, much less plain error or ineffective assistance of counsel.

## XIV.

Carter argues that this Court's proportionality review is inadequate. Carter concedes that appellate comparative proportionality review is not constitutionally required. Nevertheless, he claims that because cases not involving the death penalty are not considered in doing proportionality review, his due process rights are violated. These claims have been repeatedly rejected. *State v.*

562

Weaver, 912 S.W.2d 499, 522 (Mo. 1995); *Shurn,* 866 S.W.2d at 468; *Ramsey,* 864 S.W.2d at 328.

Carter also asserts that a sentence of death in this case is disproportionate. He claims the sentence "was imposed under the influence of passion, prejudice and other arbitrary factors." Carter relies solely on his argument asserting the inadmissibility of the letter from a member of the Serrano family. Because this Court has decided that issue against him, the claim fails.

## XV.

 Carter asserts that the Missouri death penalty scheme is unconstitutional. He requests plain error review for the trial court's acceptance of the verdicts and asserts that "[t]he motion court clearly erred in rejecting [Carter's] statutory challenges and claims that trial counsel were ineffective for failing to object." Carter asserts that Missouri death penalty scheme is improper because: (1) the proportionality review is inadequate; (2) prosecutors have too much discretion in seeking the death penalty and, thus, the death penalty is arbitrary and capricious and violates separation of powers; and (3) the death penalty statute does not accomplish any legitimate government goal and is excessive. We here reaffirm the long line of cases holding the death penalty scheme under Missouri law constitutional. *State v. Simmons,* 944 S.W.2d 165, 190–91 (Mo. banc 1997); *State v. Wacaser,* 794 S.W.2d 190, 196 (Mo. banc 1990); *State v. McMillin,* 783 S.W.2d 82, 103 (Mo. banc); cert. denied, 498 U.S. 994, 111 S.Ct. 543, 112 L.Ed.2d 552 (1990).

## XVI.

Carter claims the trial court plainly erred in submitting Instructions 4 and 19, defining reasonable doubt. Moreover, he claims counsel were ineffective for failing to object to these instructions. This claim also has repeatedly been rejected by this Court. See *Simmons,* 944 S.W.2d at 180, and cases therein cited. It is again denied.

## XVII.

 Carter finally contends that the time limits imposed by Rule 29.15 deprived him of his constitutional right to due process, to access to courts, to equal protection, to effective assistance of counsel, and create a risk of arbitrary and capricious imposition of the death penalty. The time limits of Rule 29.15 are constitutional, even in death penalty cases. *White,* 939 S.W.2d at 904.

## XVIII.

 Under sec. 565.035.3(3), this Court determines whether the sentence of death is excessive or disproportionate to the sentence imposed in similar cases. Here, the evidence shows that Carter killed Serrano and Baker–Howard in close range. This case is similar to other cases in which the death sentence was affirmed. See *State v. Foster,* 700 S.W.2d 440 (Mo. banc 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); *State v. Basile,* 942 S.W.2d 342 (Mo. banc 1997); *State v. Whitfield,* 939 S.W.2d 361 (Mo. Banc 1997). In addition, Carter killed both victims in the course of another homicide and killed Baker–Howard because of her status as a potential witness. A defendant who kills more than one person and kills someone because they may be a witness against the defendant is quite often given the death sentence. See *State v. Taylor,* 929 S.W.2d 209 (Mo. banc 1996), cert. denied, — U.S. —, 117 S.Ct. 1088, 137 L.Ed.2d 222 (1997); *State v. Nunley,* 923 S.W.2d 911 (Mo. banc 1996), cert. denied, — U.S. —, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997); *State v. Ramsey,* 864 S.W.2d 320 (Mo. banc 1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *State v. Parker,* 886 S.W.2d 908 (Mo. banc 1994), cert. denied, 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *State v. Hunter,* 840 S.W.2d 850 (Mo. banc 1992), cert. denied, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993); *State v. Six,* 805 S.W.2d 159 (Mo. banc), cert. denied, 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991); *State v. Sloan,* 756 S.W.2d 503 (Mo. banc 1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1174, 103 L.Ed.2d 236 (1989); *State v. Murray,* 744 S.W.2d 762 (Mo. banc), cert. denied, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). Considering the crime,

the evidence and defendant, this sentence is not disproportionate to those in similar cases.

## CONCLUSION

The judgments of the trial court are affirmed.

All concur.