Darian SEIBERT, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 26956.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 28, 2006.

Mark A. Grothoff, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Stephanie Morrell, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Darian Seibert ("Movant") appeals from the denial of his Rule 29.15[1] motion for post-conviction relief. Movant alleges that the motion court clearly erred in denying his claim that his appellate counsel was ineffective for failing to raise, as an issue

1. All references to rules are to Missouri Rules of Criminal Procedure (2004), unless otherwise indicated.

in his direct appeal, that the trial court erred in taking judicial notice of the records from the trials of his co-defendants, and in denying his claim that he was denied due process of law and equal protection under the law when the trial court relied on evidence and testimony presented at another trial that was later found to be involuntary. We affirm.

We affirmed Movant's conviction on direct appeal in *State v. Seibert*, 103 S.W.3d 295 (Mo.App. S.D.2003). We recite the facts as related in that opinion without further citation.

Movant's mother, Patrice Seibert ("Patrice"), lived in a mobile home in Rolla, Missouri with her five sons, including Movant. Donald Rector ("Victim"), a seventeen-year-old "friend" who took medication for a mental disorder, also lived with them. On February 12, 1997, Patrice awoke to find that her twelve-year-old son, Jonathan, had died in his sleep. Afflicted with cerebral palsy, Jonathan suffered from seizures, was blind, could neither walk nor talk, and could not feed himself. Another of Patrice's children, Michael, left the home to find Movant, who at seventeen was Patrice's eldest child, and inform him of the situation. Michael found Movant at the home of Derrick Roper ("Roper") and Jeremy Batcher ("Batcher"). The three had been drinking gin and vodka and using marijuana the night before, and resumed those activities sometime before Michael's arrival that morning. Michael told Movant that Jonathan was dead, and the two returned to Patrice's house where Movant told her to contact the police. Movant then returned to the home of Batcher and Roper, where they resumed playing cards.

Patrice was afraid to contact the police because Jonathan had "sores" and she feared the police would accuse her of child neglect. Michael again went to Movant and told him Patrice was "going crazy." Movant, Roper, and Batcher went to the trailer and devised a scheme to burn the trailer to "cover-up" Jonathan's death. The plan called for Movant and Roper to obtain gasoline with funds provided by Patrice, who was also to send her two youngest children, Patrick and Shawn, to church that evening then leave the area.[2] Finally, Movant and Roper were to set the trailer on fire.

Before the plan was carried out, the group (now consisting of Movant, Roper, and Patrice) discussed the need for "someone ... to be there" when the trailer burned so as not to arouse suspicion by leaving the severely handicapped Jonathan to be found alone. They decided to use Victim for that purpose.

Movant and Roper then went to three different stores in search of a gas can, bought one, filled it with gasoline, and called a cab to take them near the trailer park. Roper left the can in nearby woods as he did not want someone to see him with it. Then, the two went to the trailer and waited for the appropriate time to go forward with the plan.

Later, when school was out, Patrick and Shawn returned to Patrice's home. The next arrival at the trailer was Victim, followed by Patrice and Roper. Still later, Patrice sent her younger sons, Patrick and Shawn, to church and Patrice packed a bag and some money and left the premises with a male friend of hers. With Victim asleep and the others gone, Roper retrieved the gas can from the woods and started pouring gasoline through the trailer.

When some of the gasoline got on Movant, he went outside to wipe it off. When he re-entered the trailer, he saw Roper in

---

**2.** The whereabouts of Michael at this time are not disclosed by the record.

the back bedroom, hitting Victim, who was apparently convulsing from a seizure. When Movant went to that area of the trailer house, he heard a screeching sound; immediately thereafter, the gasoline ignited.[3] Before Roper and Movant were able to escape through the front door, the trailer was engulfed by fire. Movant was severely burned at this time, but did not die. Victim, who had been left behind, died from asphyxiation.

While in a hospital receiving treatment for his burns, police questioned Movant, who made an inculpatory statement. Prior to trial, Movant filed motions to suppress the statement, which were overruled. During Movant's trial, the court admitted Movant's statement into evidence over his objection. Other evidence at Movant's trial included testimony he had given at Patrice's earlier trial on the same charges. The court found Movant guilty of second-degree murder and first-degree arson and sentenced him to concurrent sentences of life in prison and twenty-five years' imprisonment.

Movant filed a pro se motion to vacate, set aside or correct the judgment and sentence, pursuant to Rule 29.15, which was later amended by appointed counsel. After a hearing, the court entered its findings of fact and conclusions of law denying Movant's motion. This appeal followed.

■ Appellate review of the denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law were clearly erroneous. Rule 29.15(k); *Hill v. State,* 160 S.W.3d 855, 857 (Mo.App. S.D.2005). A motion court's findings are clearly erroneous only if a review of the entire record leaves us

with the definite and firm impression that a mistake has been made. *Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000).

■ Movant presents two points on appeal. In Movant's first point, he alleges the motion court clearly erred in denying his claim of ineffective assistance of appellate counsel. Specifically, Movant claims that his appellate counsel was ineffective in failing to raise on direct appeal that the trial court erred by taking judicial notice of the testimony and evidence presented at the trials of Movant's co-defendants. We disagree.

■ To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his attorney's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney, and that he was prejudiced by attorney's performance. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prevail on a claim of ineffective assistance of appellate counsel, a movant must show that counsel failed to raise a claim of error that a competent and effective lawyer would have recognized and asserted. *Williams v. State,* 168 S.W.3d 433, 444 (Mo. banc 2005). "The claimed error must have been sufficiently serious to create a reasonable probability that, if it were raised, the outcome of the trial would have been different." *Id.* "The right to relief from an appellate mandate due to ineffective assistance of appellate counsel inevitably tracks the plain error rule; *i.e.,* the error that was not raised on appeal was so substantial as to amount to a manifest injustice or a miscarriage of justice." *Reuscher v. State,* 887 S.W.2d 588, 591 (Mo. banc 1994).

**3.** There was some indication in the record that the fire started when the furnace came on.

Movant was tried by the court, without a jury. At trial, the prosecution presented one witness, and then addressed the court as follows:

> [Prosecutor]: Your Honor, at this time too, I would ask the Court to take judicial notice of the proceedings which were held before you in the cases of *State v. Patrice Seibert* and *State v. Derrick Roper* and the evidence elicited there.
>
> The Court: Notice taken.

No objection was made at that time. After the prosecution had offered its exhibits into evidence the following exchange took place:

> [Prosecutor]: And Your Honor, I have for the Court's convenience made a copy of the transcript of [Movant's] testimony in the Patrice Seibert case. You may remember that was read into the record in the Roper case. And I have provided that for your perusal should you need it.
>
> [Defense Counsel]: I have no objection. I believe it's a judicial admission and the Court is—there's no recognizable objection that I know of.
>
> The Court: Thank you. Is that an exhibit now?
>
> [Prosecutor]: I did not make it an exhibit. Since you're taking judicial notice of the entire record, I'm simply providing it for the Court's convenience.
>
> The Court: Thank you very much.
>
> [Defense Counsel]: Your Honor, just for the purpose of house cleaning, I would object to the taking of judicial notice of the prior record as we weren't a party in the prior lawsuits and our interests were not preserved for the purposes of examination of those witnesses.
>
> The Court: The objection is overruled.

Movant contends that the admission of evidence and testimony gathered at the trials of Movant's co-defendants deprived him of his right to confrontation of those witnesses. He further asserts that had his appellate counsel raised it as an issue on direct appeal, a reasonable probability exists that the appellate court would have reversed his conviction.

■■■ Initially, we observe that Movant has failed to explain how reversible error could have occurred given this was a court-tried case. In a case where a jury has been waived, we presume the trial judge's judgment was not influenced or prejudiced by inadmissible evidence, unless the record clearly indicates otherwise. *State v. Ernst*, 164 S.W.3d 70, 74–75 (Mo.App. S.D. 2005). "In matters involving the admission of evidence, this Court reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Hayes*, 113 S.W.3d 222, 226 (Mo. App. E.D.2003). "Absent some showing that the evidence inflamed the [fact-finder] or diverted its attention from the issues to be resolved, the receipt of evidence, even though [inadmissible], cannot constitute prejudicial or reversible error." *Id.*

At trial, after presentation of evidence, the trial judge announced he would review the evidence and return a verdict at a later time. In a docket entry dated October 8, 2001, the trial court related that:

> Court after reviewing all exhibits and testimony agreed to by the parties does deny the defendant's motion for directed verdict at te [sic] close of all the evidence. [Court] finds defendant guilty of Murder in the second degree as lesser included offense of first degree murder as set forth as count one in the information. [Court] also finds the defendant guilty of arson in the first degree as set forth in count 2 of the information.

In pronouncing its judgment, the trial court made no clear statement of reliance on the testimony given at the trial of Mov-

ant's co-defendants. Additionally, we can find no other portion of the record indicating the trial court relied upon that testimony. Therefore, even if we were to determine that the testimony from those trials was inadmissible, Movant has not shown that the evidence played a critical role in the trial court's decision. *See Ernst,* 164 S.W.3d at 75.

Secondly, as previously related, in order to prevail on a claim of ineffective assistance of appellate counsel, Movant is required to show that "the claimed error [is] sufficiently serious to create a reasonable probability that, if it were raised, the outcome of the trial would have been different." *Williams,* 168 S.W.3d at 444. Movant has failed to make this showing. In addition to the testimony complained of here, the trial court took judicial notice of Movant's testimony from Patrice's earlier trial involving the same offenses. Movant's attorney conceded that such testimony was admissible as a judicial admission. In that testimony, Movant admitted his involvement in the planning and execution of burning the trailer with the Victim in it. Movant's inculpatory statement given to investigators was also introduced into evidence at trial. In addressing the prejudice issue, the Motion Court related the following:

> Considering the fact that Movant admitted to his involvement in the crime, both in a confession and by testifying multiple times about his involvement during the pendency of his co-defendant's and his prosecution, there is no reasonable probability that had the trial court not taken judicial notice, that the court would have reached a different result.

We do not believe this finding is clearly erroneous. Movant's first point is denied.

In his second point, Movant claims that he was denied due process of law and equal protection under the law because the trial court relied on evidence and testimony presented at Patrice's trial, which was later found to have been involuntary and inadmissible. The admission of evidence and testimony from Patrice's trial is a claim of trial error, which is outside the scope of a Rule 29.15 motion. *State v. Carter,* 955 S.W.2d 548, 555 (Mo. banc 1997). "Allegations of trial court error, reviewable on direct appeal, are not cognizable in a post[-]conviction motion." *State v. Meyers,* 832 S.W.2d 318, 321 (Mo. App. E.D.1992). Because Movant's claim is not cognizable in a post-conviction motion, the ruling of the motion court denying this claim is not clearly erroneous. Movant's second point is denied.

The motion court's denial of Movant's Rule 29.15 motion for post-conviction relief is affirmed.

SHRUM, P.J., and BARNEY, J., concur.