**STATE of Missouri, Respondent,**

v.

**Gregory HAYES, Appellant.**

No. ED 81568.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 24, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 21, 2003.

Stacey F. Sullivan, Saint Louis, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Patrick T. Morgan, Assistant Attorney General, Jefferson City, MO, for Respondent.

PAUL J. SIMON, Presiding Judge.

Gregory Hayes (defendant) appeals his sentence pursuant to the jury verdict finding him guilty of robbery in the first degree.

On appeal, defendant claims that the trial court clearly erred in failing to grant defendant's motion in limine, motion to suppress evidence and subsequent objections during voir dire, trial and closing argument as to the pocket knife found on defendant at the time of his arrest because the trial court allowed the State to adduce evidence and argue the inferences therefrom that the pocket knife seized from defendant at the time of his arrest was the weapon used to injure Tim Stephenson (victim) during the robbery. Defendant argues that the trial testimony was unclear as to what instrument, if any, caused the injury to victim and, even if a knife was used, it was used by an uncharged co-conspirator named "Little Man" whom the police could not locate, and that there was

no evidence adduced at trial linking defendant's knife to the crime.

The evidence, viewed in the light most favorable to the verdict, is as follows: victim was leaving the Delmar Lounge at approximately 2:30am on October 28, 2000 and was confronted by a man who offered to sell him drugs. Victim tried to ignore the man and proceeded to his car. The man then came up behind the victim, pushed him into the side of his car, and punched him in the left side. At the time victim did not think the man had done anything other than punch him in the side. After taking victim's wallet, the man proceeded to walk to the front of victim's car, at which time the victim used his keys to enter his car and attempt to get away. Before he was able to lock the doors, however, the man opened the driver's side door and punched victim in the face. The man then told victim that he had a gun and that he would shoot victim if he did not get out of the car. Victim then got out of the car, threw the keys on the front seat, and told the man to take the car and asked him not to kill him. The man then drove off in victim's car. Victim subsequently went back into the Delmar Lounge, called the police, and gave them a statement about the events and a description of the man who had stolen his car. Victim declined medical treatment at that time.

The following morning victim noticed a small spot of dried blood on his side near the area where he had been punched by the attacker and noticed that there was some sort of puncture wound on his side. After victim went to the police station to follow-up on his case, he went to Barnes Hospital to get the injury on his side examined. Victim testified that he was told at the hospital that the wound to his side broke the skin but did not hit his organs or anything else, and that the medical staff at the hospital gave him aspirin and had the wound swabbed. He then returned to the police station to look at a lineup as the police told him they had someone in custody. According to the police, victim was unable to pick defendant out of the lineup at that time.

Defendant had been arrested in University City the afternoon after victim was robbed when he was caught by a police officer selling CDs out of a case, which victim later identified as the one he had in his car when it was stolen. Defendant was arrested for selling CDs without the proper permit, and in a search incident to arrest a pocket knife was discovered upon his person. In a subsequent statement to the police, defendant admitted to being involved in the robbery of victim. Defendant stated that he had run into two acquaintances that evening, Al and Little Man, who told him they were going to "jack this white guy" and asked defendant to be a lookout for the robbery. Defendant agreed to and after Little Man struck the person and took his car, defendant met him around the corner and was given the CDs for his role in the robbery. Defendant was cooperative with the police in their investigation, including going to the Delmar Lounge to show them how he had perceived the night's events, and expressed remorse for any pain he may have caused the victim of the robbery.

On November 30th, 2000, defendant was indicted by a grand jury in the city of St. Louis of the class A felony of robbery in the first degree, in violation of § 569.020, RSMo 2000 (all further references hereinafter shall be to RSMo 2000), charging that the defendant forcibly stole a car and CDs in the possession of victim, and in the course thereof defendant used a dangerous instrument against victim. Defendant was also charged as a prior and persistent offender under §§ 558.016 and 557.036.4, in that he had pled guilty to two or more

felonies committed at different times. Those cases included two separate guilty pleas to possession of a controlled substance and a guilty plea to both second degree burglary and stealing over $150. After discovery, the State filed an amended information in lieu of indictment, charging that defendant, acting with another, forcibly stole a car and CDs in the possession of victim, and that in the course thereof defendant, acting with another, used a dangerous instrument against victim. This amended information removed all concerns about which actions defendant took in the commission of the robbery, as Missouri has eliminated the distinction between principals and accessories, and now all persons who act in concert to commit a crime are equally guilty. *State v. Wurtzberger,* 40 S.W.3d 893, 895 (Mo.banc 2001).

On August 10, 2001, defendant moved to have the evidence seized from him when he was arrested excluded on the basis that the search by the police was an illegal search and seizure. On April 8, 2002, defendant filed a motion in limine requesting the court to prohibit the State from adducing evidence of, referring to, or arguing any reference, argument, testimony or other mention that defendant was allegedly in possession of a knife at the time of his arrest in the matter. Defendant argued that: (1) there was absolutely no evidence whatsoever linking defendant's knife with the instrument which caused a puncture wound to victim; (2) any mention of defendant's knife would be far more prejudicial than probative, would mislead and inflame the jury, is not relevant, and is evidence of uncharged crimes and bad acts. Defendant's motion in limine was denied.

During testimony at trial, victim, for the first time, positively identified defendant as the man who attacked him and took his car. He testified that at the time of the lineup he was "pretty sure" defendant was the person who robbed him even though he did not say so, and that after having had time to think about it was able to come to the conclusion that it was defendant who had robbed him. The other focus of trial testimony was the medical records from victim's visit to Barnes Hospital. A custodian of records for the hospital testified that medical records referred to the victim's injury on his left side as both "two puncture wounds to the left flank" and "possible stab wounds or abrasion." There was no testimony at trial that defendant's knife, or any other type of instrument, was responsible for the wounds to victim's left side.

Defendant's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence were denied. During closing arguments, the State argued both that victim was stabbed by a knife when he thought he was punched by either the defendant or one of his accomplices, and that the reason victim surrendered his car was that he was threatened and that he believed that the man who robbed him was getting ready to pull a weapon. One of defendant's points in his post-trial motions was that the trial court erred in denying defendant's various objections to the State adducing evidence and arguing inferences that the pocket knife seized from defendant at the time of his arrest was the weapon used to injure victim during the robbery. Defendant argued that he was prejudiced by this ruling in that: (1) the evidence was inconclusive whether victim had been injured with the knife; (2) the State adduced no evidence to show that the pocket knife seized from defendant was in any way related to the robbery; (3) admission of the knife was more prejudicial than probative; and (4) admission of the knife improperly inflamed the jury against defendant. The motion was denied and on June 21, 2002, defen-

dant was sentenced to fifteen years as a persistent offender.

■ Evidence is deemed relevant if it logically tends to prove or disprove a fact in issue or corroborates evidence which itself is relevant and bears on a principal issue. *State v. Santillan*, 1 S.W.3d 572, 578 (Mo.App. E.D.1999). In a criminal proceeding, questions of relevance are left to the discretion of the trial court and its ruling will be disturbed only if an abuse of discretion is shown. *Id.* A weapon with which the crime might have been committed, found near the time and scene of the crime, is relevant to show the means by which the crime was committed. *State v. Taylor*, 701 S.W.2d 725, 728 (Mo.banc 1985). There is no necessity for proof that the knife be identified specifically as the weapon used. *State v. Jones*, 679 S.W.2d 927, 929 (Mo.App. E.D.1984). A weapon is usually held admissible if it tends to connect the defendant with the crime, prove the identity of the deceased, shows the nature of any wounds, or throws any relevant light upon any material matter in issue. *State v. Smulls*, 935 S.W.2d 9, 19 (Mo.banc 1996). Generally, weapons not connected with the defendant or the crime with which he is charged and not otherwise possessing probative value are not admissible at trial. *State v. Mills*, 809 S.W.2d 1, 4 (Mo.App. E.D.1990).

Here, no connection was made between the pocket knife found on defendant and any wounds on the victim. There was no testimony that the knife was the weapon used, that the knife was consistent with the puncture wounds of victim, or that it was a knife which made the puncture wounds on victim's left side. The only connection between the crime and the knife is that it was found on defendant the next day when he was arrested within a few miles of the robbery. Therefore, the probative value of the knife was low and argues for its exclusion.

■ Our inquiry does not end there, however. In matters involving the admission of evidence, this Court reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Anderson*, 76 S.W.3d 275, 277 (Mo.banc 2002). Absent some showing that the evidence inflamed the jury or diverted its attention from the issues to be resolved, the receipt of evidence, even though irrelevant and immaterial, cannot constitute prejudicial or reversible error. *Mills*, 809 S.W.2d at 4. Further, evidence which might be considered prejudicial in a close case is harmless where evidence of guilt is strong. *Santillan*, 1 S.W.3d at 579.

■ The test for admission of evidence is whether the prejudicial improper admission was outcome-determinative. *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000). When the prejudice resulting from the improper admission of evidence is only evidence-specific and the evidence of guilt is otherwise overwhelming, reversal is not required. *Id.* In contrast, when the prejudice resulting from the improper admission of evidence is outcome-determinative, reversal is required. *Id.* A finding of outcome-determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence. *Id.*

■ Particularly in light of his confession, any prejudice to defendant based upon the admission of the knife cannot be said to be outcome-determinative. Defendant, in his statement to police, admitted his culpable involvement in the robbery of

victim. Additionally, the use of a weapon in the robbery would not require the State to produce the weapon in order for the jury to convict defendant of first degree robbery. Victim also testified at trial that the person who stole his car threatened to shoot him if he did not get out of his car and this threat is what convinced him to give up his vehicle. In any event, this testimony alone would be sufficient to find defendant guilty of first degree robbery in that it would constitute the threatened immediate use of a dangerous weapon. § 569.020(1)(3).

Defendant has not shown how the admission of the knife so influenced the jury that it would have reached a different conclusion but for the erroneous admission of the evidence. Evidence of defendant's guilt, based upon his own admission, is very strong and renders any error in the admission of the knife harmless.

Judgment affirmed.

GARY M. GAERTNER, SR. and KATHIANNE KNAUP CRANE, JJ., concur.