**STATE of Missouri, Respondent,**

v.

**William E. ERNST, Appellant.**

No. 26343.

Missouri Court of Appeals,
Southern District,
Division Two.

April 28, 2005.

Motion for Rehearing or Transfer Denied
May 23, 2005.

Application for Transfer Denied
June 21, 2005.

---

Kent Denzel, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Asst. Atty. Gen., Jefferson City, MO, for respondent.

ROBERT S. BARNEY, Judge.

William E. Ernst ("Appellant") appeals his conviction for one count of the class C felony of statutory rape in the second de-

gree, a violation of section 566.034.[1] Following a bench trial, the trial court sentenced Appellant to seven years in prison. He now brings one point on appeal, alleging the trial court erred in allowing testimony related to his "habit of taking young girls into his bed." We affirm the judgment of the trial court.

■ " 'When a defendant waives trial by jury, the trial court's findings have the force and effect of a jury verdict.' " *State v. Love*, 134 S.W.3d 719, 721 (Mo.App. 2004) (quoting *State v. Marshell*, 825 S.W.2d 341, 342 (Mo.App.1992)). Accordingly, " '[a]ppellate review is as though a verdict of guilty has been returned by a jury. If there is substantial evidence to support the findings of the trial court, its judgment is to be affirmed.' " *Id.* (quoting *State v. Giffin*, 640 S.W.2d 128, 130 (Mo. 1982)). In our review, we accept " 'as true the evidence that tends to prove the defendant's guilt and all inferences favorable to the state. Contrary evidence and inferences are disregarded.' " *Id.* (quoting *Giffin*, 640 S.W.2d at 130).

■ The credibility of witnesses and the weight to be given the evidence are for the trial court to determine, and this Court is to defer to the trial judge's superior position from which to determine credibility. *See State v. Blankenship*, 830 S.W.2d 1, 16 (Mo. banc 1992). We are not to determine witness credibility nor weigh the evidence on appeal. *State v. Harper*, 884 S.W.2d 362, 364 (Mo.App.1994).

Viewed in a light most favorable to the trial court's verdict as we must, *State v. Creech*, 983 S.W.2d 169, 170 (Mo.App. 1998), the record reveals that Appellant, who was sixty-six years old at the time of trial, first befriended a young woman named L.F. when she was eleven years old.[2] L.F.'s mother, who was struggling to raise four children on her own, owned a restaurant near Appellant's home and for a number of years Appellant often dined at the restaurant. L.F., who waited tables at the restaurant, grew to enjoy spending time with Appellant and even referred to him as "Grandpa Bill." In fact, not only did Appellant often aid L.F.'s family by purchasing clothes and toys for the children, but L.F. and her siblings often stayed the night at Appellant's home.[3]

According to L.F., beginning sometime in 2001, when she was fourteen years old, Appellant began to tell her on a regular basis "that [she] needed to sleep with him because God wanted [her] to" so that she could "be an angel in heaven" and "wouldn't make God mad." Appellant also began providing alcohol to L.F. during this time period, such as "Jack Daniels, vodka, Seagram's 7, [and] Jack Daniels mixed drinks."

On January 31, 2002, when L.F. was fifteen years old, Appellant took her to the mall to buy a dress for an upcoming school

---

**1.** "A person commits the crime of statutory rape in the second degree if being twenty-one years of age or older, he has sexual intercourse with another person who is less than seventeen years of age." § 566.034; *see also State v. Bewley*, 68 S.W.3d 613, 617 (Mo.App. 2002). Sexual intercourse is defined as "any penetration, however, slight, of the female sex organ by the male sex organ, whether or not an emission results." § 566.010(4).

Statutory references are to RSMo 2000, unless otherwise set out.

**2.** We use the initials of the victim and any other minors mentioned in the opinion in order to protect their identity.

**3.** According to L.F., besides alcohol, Appellant also bought her clothes, such as thong underwear, shirts, pants, socks, shoes, dresses for several school dances, and cigarettes. Appellant also regularly gave her money, usually a $20 bill, and gave her $100.00 on her birthday every year.

dance. In Appellant's truck on the way home from the mall, Appellant told L.F. that she needed to have sexual intercourse with him "to get it done and over with, that this was a good time and just stop waiting around" to do it. When they got back to Appellant's home, they watched movies and L.F. took a shower. After L.F. had gotten in bed with Appellant, Appellant took L.F.'s shorts and underwear off and then engaged in sexual intercourse with L.F., which lasted ten to fifteen minutes. Appellant also put his hand underneath L.F.'s shirt and touched her breasts. According to L.F., while Appellant was having sexual intercourse with her, he told her that she was "doing a good job." L.F. testified that after it was over, she felt "numb" and "disgusting." When she and Appellant were still lying in his bed, he said to her, "God's proud of you" and also told her that she "should be proud of herself." Afterwards, L.F. got dressed and slept on the couch.

After the January 31, 2002, incident, L.F. continued to see Appellant at her mother's restaurant. Appellant would warn her not to tell anyone about having sex with him because "God would be angry with [her] if [she] let [Appellant] get in trouble." A few weeks later, Appellant again asked L.F. to have sex with him. L.F. testified that he again told her that "God was proud of" her and then asked her if she "would have sex with him but not for God." L.F. refused.

On April 16, 2002, L.F. told her mother about the incident with Appellant. Thereafter, Appellant was arrested and charged with statutory rape in the second degree.

Following a March 18, 2004, bench trial, the trial court took the case under advisement. On April 12, 2004, the trial court found Appellant guilty beyond a reasonable doubt of statutory rape in the second degree and later sentenced him to seven years in prison. This appeal followed.

■ In his sole point on appeal, Appellant maintains the trial court abused its discretion in allowing L.F.'s cousin, D.A., to testify that Appellant "took [her] into his bed." Appellant argues that D.A.'s testimony was "neither logically nor legally relevant to the crime charged" because it "was offered solely to show [Appellant's] habit of taking young girls into his bed in order to 'corroborate' [L.F.'s] claim ... that [Appellant] had sex with [her] ...." As a result of the admission of D.A.'s testimony, Appellant urges that he was prejudiced by the trial court's consideration of such inadmissible evidence.[4]

The record shows that in addition to the testimony from L.F., the State called L.F.'s eleven-year-old cousin, D.A., as a witness. Prior to D.A. taking the stand, Appellant objected to D.A.'s testimony on the basis that he anticipated that her testimony would "be an attempt to improperly admit alleged evidence of improper bad acts or to somehow show habit, and—and it's irrelevant and would be inadmissible." The trial court overruled the objection.

When D.A. began to testify, she stated that she spent the night at Appellant's house with L.F. and one of her siblings. Appellant again objected to D.A.'s testimony on the basis of relevance and argued that her testimony amounted to unrelated evidence of alleged prior bad acts. The

4. We note that while Appellant's point relied on premises his complaint as being that D.A.'s testimony showed "habit," the argument portion of Appellant's brief concentrates almost exclusively upon the "[a]dmissibility of '[m]isconduct' [e]vidence" and contains a single sentence on "habit." "We limit our review to matters raised in the points relied on" and will only consider Appellant's assertion that D.A.'s testimony was improperly admitted to show habit. *See State v. Coody*, 867 S.W.2d 661, 664 n. 1 (Mo.App.1993).

State responded that "[t]he relevance is ... that he has girls get in bed with him ... having her get in bed with him is not a bad act; it's just his habit of having young girls get in bed with him." Though Appellant argued that there was no foundation for the evidence of "habit," the trial court overruled the objection and noted Appellant's continuing objection to D.A.'s testimony.

D.A. then testified that in 2001, when she spent the night at Appellant's home, Appellant woke her up in the middle of the night and told her that he wanted to talk to her in his bed. She stated that Appellant "grabbed" her arm and "brought [her] over to the bed." Appellant laid down "right next" to her and put his arm underneath her head. D.A. stated that she laid there for awhile with her eyes open and then got up "feeling uncomfortable." D.A. then returned to sleeping on the couch. She went on to state that Appellant never touched her in a sexual way.

■ "On rare occasions Missouri courts have dealt with the general topic of the admissibility of evidence pertaining to a habit of a person." *Hawkins v. Whittenberg*, 587 S.W.2d 358, 363 (Mo.App.1979). However, " 'the admissibility of this character of evidence should be restricted and kept within narrow limits.' " *Id.* (quoting *Hodges v. Hill*, 175 Mo.App. 441, 161 S.W. 633, 636 (1913)). Foreign authorities have set out that " '[a] habit is the person's regular practice of meeting a particular kind of situation with a specific type of conduct ....' " *Id.* at 364 n. 2 (quoting McCormick on Evidence, 2d ed., § 195, pp. 462–63). "Evidence of the habit of a person ... is relevant to prove that the conduct of the person ... on a particular occasion was in conformity with the habit

or routine practice." *Id.* (quoting Fed. R.Evid. 406).[5]

In the present matter, D.A. testified that on one specific occasion Appellant asked her to lie in bed with him. This certainly does not demonstrate Appellant's regular practice of meeting a particular kind of situation with a specific type of conduct, especially in light of the fact that he raped L.F. when he invited her to his bed and he did not molest or rape D.A. *See id.* at 363–64. The one specific incident about which D.A. testified was not enough to show that Appellant had a habit or a routine practice of "having young girls get into bed with him." Accordingly, the trial court erred in overruling Appellant's objection to D.A.'s testimony on the basis of habit.

■ With that being said, even though the trial court erred in admitting D.A.'s testimony, Appellant is not entitled to a reversal and retrial. As stated in *State v. Sladek*,

'In a jury-waived case a certain amount of latitude in the admission of evidence is allowed, and even where an error is made in the admission of some evidence, except where the trial court relied on that evidence in arriving at its findings of fact and conclusions of law, such error is ordinarily held to be non-prejudicial ... when an action is to the court sitting without a jury, the rules of exclusion are less strictly enforced.'

*State v. Sladek*, 835 S.W.2d 308, 313 (Mo. banc 1992) (quoting *State v. Leigh*, 580 S.W.2d 536, 545 (Mo.App.1979), *reversed on other grounds by Leigh v. State*, 639 S.W.2d 406 (Mo.App.1982)).

■ " '[I]n a judge-tried case, we presume that the trial judge was not prejudiced by inadmissible evidence and was not

5. As best we discern, Missouri has not adopted this particular Federal Rule. *See* *State v. Hemby*, 63 S.W.3d 265, 269 (Mo.App. 2001).

influenced by it in reaching a judgment, unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence.'" *Bewley*, 68 S.W.3d at 619 (quoting *State v. Anders*, 975 S.W.2d 462, 466 (Mo.App.1998)); *see also State v. Mullins*, 140 S.W.3d 64, 71 (Mo.App.2004).

 "'In matters involving the admission of evidence, this Court reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *Love*, 134 S.W.3d at 724 (quoting *State v. Hayes*, 113 S.W.3d 222, 226 (Mo.App. 2003)). "Absent some showing that the evidence inflamed the fact-finder or diverted its attention from the issues to be resolved, the receipt of evidence even though irrelevant and immaterial, cannot constitute prejudicial or reversible error.'" *Id.* "'The test is whether the prejudicial improper admission was outcome-determinative.'" *Id.* (quoting *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000)); *see also State v. Santillan*, 1 S.W.3d 572, 579 (Mo. App.1999).

In pronouncing its judgment, the trial court set out in an almost perfunctory manner that:

> The Court, after hearing the evidence, hearing the testimony of all the witnesses and examining the suggestions filed by counsel and what the Court

believes the applicable law, does make a finding that the Court believes that the—or the Court finds the Defendant guilty of the charge, finding that evidence beyond a reasonable doubt.

Here, no clear and obvious statement of reliance on D.A.'s testimony was made by the trial court in reaching its decision.[6] Nothing in the record shows the trial considered and *relied* upon inadmissible "habit" evidence in making its determination of guilt beyond a reasonable doubt.[7]

In short, Appellant has not shown that the inadmissible evidence played a critical role in the trial court's decision. *See Love*, 134 S.W.3d at 724. It is our view that the testimony given by D.A. was not "outcome-determinative" in that the testimony provided by L.F. was direct evidence of the charge of statutory rape in the second degree against Appellant. *See Bewley*, 68 S.W.3d at 617. There is sufficient support in the record permitting the trial court to have found Appellant guilty beyond a reasonable doubt of the offense charged.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SHRUM, J., concur.

6. We note that the trial court made no express findings of facts and conclusions of law.

7. *See Bewley*, 68 S.W.3d at 619 (held that in a court-tried case the trial court is afforded sound discretion and there is a presumption that the trial court was not prejudiced by inadmissible evidence nor influenced by it in reaching its judgment, unless evidence clearly shows the trial court "considered and relied upon the inadmissible evidence"); *State v. Goodwin*, 65 S.W.3d 17, 24–25 (Mo.App.2001) (held that in a court-tried case the mere mention of a defendant's reluctance to take a polygraph examination is not considered a species of misconduct warranting mistrial because under those circumstances a trial court is presumed to have disregarded any improper remarks); *Anders*, 975 S.W.2d at 465–66 (held that in a court-tried case, even when the trial court erred in admitting results of a breath test due to failure by the authorities to timely test the breath machine, there existed a presumption that the trial court was not prejudiced by inadmissible evidence and was not influenced by it in reaching its judgment).