**STATE of Missouri, Respondent,**

v.

**Jeremiah N. MASHEK, Appellant.**

**No. SD 30649.**

Missouri Court of Appeals, Southern District, Division Two.

Feb. 23, 2011.

---

Carl E. Smith, Ava, MO, for Appellant.

Chris Koster, Attorney General and Daniel N. McPherson, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Following a bench trial, Jeremiah N. Mashek ("Appellant") was convicted of sexual misconduct with a child under the age of fourteen in violation of section 566.083.[1] Appellant was placed on supervised probation for five years after the trial court suspended execution of his three-year sentence. This appeal followed. We affirm the trial court's judgment.

### Factual and Procedural History

We review the facts in the light most favorable to the conviction and recite them with that standard in mind. *See State v. Hill*, 890 S.W.2d 750, 751 (Mo.App. W.D. 1995). On November 21, 2008, thirteen-year-old M.B., and her eight-year-old sister K.B., were staying at Appellant's house while their mother was at work. M.B. and K.B. went to the bathroom but had trouble shutting the door. M.B. asked Appellant if he would help her shut the door and he agreed. Appellant asked K.B. to leave, and he shut the door so that he and M.B. were alone inside the bathroom.

Appellant then told M.B. to suck in her stomach so he could see how skinny she was. M.B. sucked in her stomach and Appellant pulled on the waistband of her jeans[2] and then let go. Appellant then pulled M.B.'s jeans out a second time but this time he also pulled out her underwear. Appellant again told M.B. to suck in and he leaned over and looked down her pants.

Later that day, M.B. and K.B. encountered Appellant in the furnace room. Appellant again told K.B. to leave. Appellant asked M.B. if he had made her feel nervous. At that point, M.B. said he had not. Appellant made M.B. promise not to tell anyone what had happened. He then asked M.B., "[W]hy do you shave down there?" M.B. replied she did so because her mom, sister, and friends did. Appellant then asked M.B., "Want me to show you what guys like?" M.B. said "no." Appellant then told M.B. she should "leave a little bit of hair." Appellant was standing about two feet away from M.B. She was scared he "was gonna do it again." M.B. shaved her "private" at that time but had never told Appellant.

M.B. did not immediately tell anyone what had happened because she was scared. Her mother, however, did notice an immediate change in M.B.'s demeanor. M.B. also began telling her mother she wanted to stay home instead of going to Appellant's house and she did not want K.B. to go there either. A few weeks later, M.B. told her mother what happened in Appellant's bathroom. M.B.'s mother then called police.

---

1. All references to section 566.083 are to RSMo Cum.Supp. (2008). All other statute references are to RSMo 2000.

2. Her jeans were described as "little hip-hugger, low-ride pants."

Appellant was charged by information with sexual misconduct with a child under the age of fourteen in violation of section 566.083. Appellant waived his right to a jury trial and was tried by the court on January 25, 2010. Eleven witnesses testified, including M.B., who testified to the facts as stated above.

The trial court found Appellant guilty on the charge of sexual misconduct. A Sentencing Assessment Report ("SAR") was requested by the trial court.

At the sentencing hearing on May 4, 2010, the State asked the trial court to sentence Appellant to the Sex Offender Assessment Unit. Defense counsel specifically asked the trial court to place Appellant on probation and to suspend execution of sentence ("SES"), rather than suspend imposition of sentence ("SIS"), so the judgment would be final and subject to appeal. The trial court considered suspended imposition of sentence but then sentenced Appellant to three years in the Department of Corrections, suspended execution of that sentence, and placed Appellant on five years' supervised probation. No objections to the sentence were raised. This appeal followed.

Appellant claims the trial court erred in finding Appellant guilty because: (1) the "undisputed bodily location that was exposed is not encompassed within [section 566.083]'s definition of 'genitals' "; and (2) it was physically impossible for Appellant to see M.B.'s genitals. Appellant also alleges the trial court erred in suspending

execution of Appellant's sentence as he was forced to make an election between SIS and SES in order to pursue this appeal, and such an election is a "legal contradiction of well-settled case law that a suspended imposition of sentence is an unappealable non-final judgment notwithstanding one of the most serious said punitive consequences of lifetime sex offender registration is mandated upon a finding of guilt pursuant to section 589.400 RSMo. [sic]." Respondent argues sufficient evidence supports Appellant's conviction and that SES was proper. The issues presented for determination are:

1. Was the exposed area encompassed within the definition of "genitals" as defined in section 566.083?

2. Was there sufficient evidence to support a conclusion it was physically possible for Appellant to have seen M.B.'s genitals?

3. Did the trial court plainly err in suspending execution of Appellant's sentence?

### Points I & II: Sufficient Evidence Supported Appellant's Conviction

██ Because Appellant's Points I and II are interrelated, and both allege the evidence presented at trial was insufficient to sustain his conviction, we address them together.[3] Point I claims the area Appellant exposed in pulling out M.B.'s underwear does not meet the definition of "genitals" under section 566.083, and Point II

3. We note Appellant's Brief fails to comply with Rule 84.04. Appellant's Statement of Facts does not provide a "fair and concise statement of the facts relevant to the questions presented for determination without argument." Rule 84.04(c). The Statement of Facts recites facts primarily in favor of Appellant's arguments and omits those supporting the conviction. In Points I and II, Appellant is asking us to substitute this Court's opinion

as a finder of fact as opposed to the trial court, which we cannot do. Appellant also fails to include "a concise statement of the applicable standard of review for each claim of error." Rule 84.04(e). Nevertheless, because we are able to discern Appellant's issues and arguments we, *ex gratia*, exercise our discretion to review this appeal on its merits. *See Prosser v. State*, 243 S.W.3d 496, 498 (Mo.App. E.D.2008).

alleges the evidence demonstrated it was physically impossible for Appellant to have seen M.B.'s genitals. The determinative issues are whether M.B.'s exposed area is encompassed within the definition of "genitals" under section 566.083[4] and if there was sufficient evidence to conclude it was physically possible for Appellant to see M.B.'s genitals.

### Standard of Review

The trial court's findings have the force and effect of a jury verdict when a defendant waives trial by jury. *State v. Ernst*, 164 S.W.3d 70, 72 (Mo.App. S.D.2005). Accordingly, appellate review is identical to cases where the verdict of guilty is returned by a jury, and the judgment will be affirmed if there is substantial evidence to support the findings of the trial court. *Id.* This Court accepts "as true the evidence that tends to prove the defendant's guilt and all inferences favorable to the state. Contrary evidence and inferences are disregarded." *Id.* (internal quotation omitted). "The credibility of witnesses and the weight to be given the evidence are for the trial court to determine, and this Court is to defer to the trial judge's superior position from which to determine credibility." *Id.* This Court is not to determine witness credibility, nor weigh the evidence on appeal. *Id.*

4. Section 566.083 provides in part:

> A person commits the crime of sexual misconduct involving a child if the person:
> . . . .
> (3) Knowingly coerces or induces a child less than fifteen years of age to expose the child's genitals for the purpose of arousing or gratifying the sexual desire of any person, including the child.

5. Appellant's counsel asked M.B.:

> Q. Later on you and Jeremiah had a conversation about shaving your waist and upper pubic area; isn't that true?

### Analysis

◼ Appellant first claims the "undisputed bodily location that was exposed is not encompassed within said statute's definition of 'genitals'" because Appellant testified to "seeing only as far as that shaved area," and M.B.'s testimony reveals that "when she testified about shaving her 'vagina' and what [A]ppellant could have observed when her jeans were pulled out what M.B. was referring to was the lower abdominal/upper pubic hair region where M.B. was shaving one-half inch below the top of her jeans." However, Appellant is misguided in claiming the evidence demonstrates only her "lower abdominal/upper pubic hair region" was exposed.

As evidence that Appellant only saw M.B.'s waist and upper pubic area, Appellant points to the fact M.B. responded "Yes" when asked if Appellant could see her waist and upper pubic area when he pulled out her pants. The fact Appellant saw this area certainly does not preclude him from also having seen her genitals; she did not testify Appellant was unable to see anything else, or that Appellant could not see her vagina when he bent over to look down her pants.[5] In fact, M.B. specifically testified Appellant pulled her jeans and underwear out five-and-one-half inches, leaned in and looked down. These jeans were the "hip-hugger, low ride

> A. Yes.
> . . . .
> Q. Okay. And isn't it true when you say he was looking in that direction, what—what he could see actually was that upper pubic area where you shaved along that area; is that right?
> A. Yes.
> Q. So when you talk about the—the vaginal area, you're talking about that area—and I'm sorry I have to ask you these questions, believe me—but you're talking about that area where the pubic hair is at the top of it where you were shaving, right?
> A. Yes.

pants." The trial court was present and observed the witnesses, their gestures and demeanors. From this evidence, the trial court could reasonably infer Appellant's actions exposed M.B.'s vagina, not just the upper pubic area.[6] Although Appellant testified he only saw as far as her shaved upper pubic area, the trial court was not required to believe him. Again, the trial judge was in a far superior position to judge witness credibility and we must defer to the trial judge's determinations. *See Ernst,* 164 S.W.3d at 72. We cannot substitute this Court's judgment for that of the trial judge and ignore evidence supporting the conviction. Because there is sufficient evidence for the trial judge to conclude Appellant exposed M.B.'s vagina, we need not address whether the "lower abdominal/upper pubic hair region" is encompassed within section 566.083's definition of "genitals."

■ Similarly, Point II claims that "using M.B.'s testimony standing alone, it was impossible for [A]ppellant to have observed M.B.'s genitals." Here, Appellant is asking this Court to disregard evidence that tends to prove Appellant's guilt. We decline to do so and find there was sufficient evidence to support a conclusion it was physically possible for Appellant to have seen M.B.'s genitals.

Initially, M.B. testified her jeans and underwear were pulled out three inches, however, the trial court noted for the record the distance M.B. showed with her hands "look[ed] considerably longer than three inches." Subsequently, Appellant's counsel measured the distance between M.B.'s hands with a ruler. Those measurements showed M.B.'s jeans and underwear were pulled out approximately five-and-a-half inches and Appellant's head was about twelve inches away from M.B. when he pulled out her jeans and underwear.[7]

Appellant argues the "issue is whether a male whose field of vision is twelve to sixteen inches distant from a female fully clothed wearing jeans pulled away from her body three to five inches can observe said female's genitals." This disregards M.B.'s testimony that these distances were "how far away [Appellant] was *before* he— he leaned in and looked down." [8] (Emphasis added). M.B. explicitly testified Appellant leaned in and looked down her pants after pulling out her jeans and underwear five-and-a-half inches; from this perspective, it was reasonable to conclude Appellant observed M.B.'s genitals, particularly since these were "hip-hugger, low ride pants." Appellant is essentially asking this Court to reverse its standard of re-

---

6. Appellant is correct that section 566.083 does not specifically define "genitals." However, Appellant admits, "It is clear from the dictionary definition, statutes, CSR and appellate case law that the 'genitals' as applicable to the case at bar is the vagina in that the two words are defined and used interchangeably."

7. The following exchange took place between the prosecutor and M.B.:
   Q. And he pulled—now, whenever he—he pulled your—your pants out, did he lean and look down?
   A. Yes.
   . . . .
   Q. The second time he pulled your pants out, did he look down?

A. Yes.
Q. Mr. Smith asked you about how far away you were from him, and I think you indicated about a foot, more or less?
A. Yes.
Q. And that's about how far away he was before he—he leaned in and looked down?
A. Yes.

8. This testimony is consistent with other testimony from M.B. M.B.'s mother and a detective sergeant with the Licking Police Department also testified M.B. said Appellant leaned over and looked down M.B.'s pants after pulling them away from her body.

view and accept contrary evidence and inferences as true, while disregarding evidence and inferences that tend to prove Appellant's guilt. This we cannot do. *See Ernst,* 164 S.W.3d at 72.

Additionally, after looking down M.B.'s underwear, Appellant asked her why she shaved "down there" and suggested M.B. "leave a little bit of hair." M.B. testified she never told Appellant she shaved her "private." His suggestion to "leave a little bit of hair" implies this question was prompted from his observation she shaved all her pubic hair.[9] There was sufficient evidence adduced at trial to support the trial court's conclusion it was physically possible for Appellant to have seen M.B.'s genitals.

In conclusion, M.B.'s exposed area is encompassed within the definition of "genitals" under section 566.083, and there was sufficient evidence to support a conclusion it was physically possible for Appellant to see M.B.'s genitals. Accordingly, we hold sufficient evidence supported a finding that M.B.'s genitals were exposed in violation of section 566.083. Points I and II are denied.

### Point III: No Plain Error in Appellant's Sentence

Appellant's final point alleges error in imposing SES, rather than SIS, because SIS is not a final appealable judgment and this is contrary to its intended legislative purpose. The State argues there was no error because Appellant received the relief requested, and plain error review is not appropriate for a statutorily-authorized sentencing disposition. We determine whether the trial court plainly erred in imposing SES.

### Standard of Review

Because Appellant did not object to his sentence during or after allocution, his claim of error is not properly preserved for review on appeal. *See State v. Polson,* 145 S.W.3d 881, 897 (Mo.App. W.D.2004). As such, review is available only for plain error pursuant to Rule 30.20.[10] Plain error review is discretionary and involves a two-step analysis. *State v. Jennings,* 322 S.W.3d 598, 601 (Mo.App. S.D.2010). First, this Court considers the facts and circumstances to facially determine if there was plain error—meaning "evident, obvious and clear" error. *Id.* (internal citation omitted). Only if this Court identifies plain error do we proceed to the second step of determining whether manifest injustice, or a miscarriage of justice, resulted. *Id.*

### Analysis

At the sentencing hearing, Appellant's counsel specifically requested the trial court order SES rather than SIS so his conviction could be appealed. " 'If a party gets what he requests from the trial court, he should not be able to convict it of error, plain or otherwise, for complying with his request.' " *State v. Marshall,* 302 S.W.3d 720, 725 (Mo.App. S.D.2010) (quoting *State v. Beck,* 167 S.W.3d 767, 776 (Mo.App. W.D.2005)). Here, the trial court did what Appellant's counsel requested.

"No criminal trial or judgment should be affected, in any manner, by an error committed at the instance of the

---

9. M.B. testified she shaved her "private." When asked if she shaved "All of [her] privates?" she responded, "Yes, some—yeah, like on the very top." M.B. then agreed she shaved "where there's pubic hair...."

10. All rule references are to Missouri Court Rules (2010).

defendant." *State v. Williams,* 118 S.W.3d 308, 313 (Mo.App. S.D.2003); § 545.030.1(16).

Accordingly, there was no evident, obvious and clear error and as a result, the trial court did not plainly err in ordering SES. We need not proceed to the next step of plain error review. Point III is denied.

The trial court's judgment and sentence are affirmed.

RAHMEYER, P.J., and BATES, J., Concur.