In the Interest of D.M.

No. ED 97662.

Missouri Court of Appeals,
Eastern District,
Division One.

May 29, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 3, 2012.

Application for Transfer Denied
Aug. 14, 2012.

Sarah Johnson, St. Louis, MO, Marsha L. Levick, Philadelphia, PA, for appellant.

Margaret E. Gangle, St. Louis, MO, for respondent.

## OPINION

CLIFFORD H. AHRENS, Presiding Judge.

Fifteen-year old D.M. appeals the judgment of the family court, juvenile division, of the circuit court finding that she committed the offense of assault while on school property in violation of § 565.075 RSMo. D.M. asserts that the trial court erred by relying on evidence outside the record, specifically hearsay and propensity evidence from her abuse and neglect file, to support its finding that she committed the charged offense. D.M. further asserts that, absent such evidence, the record is insufficient to prove the charge beyond a reasonable doubt. We affirm.

## Background

In the fall of 2011, D.M. was a new student in the tenth grade at a charter high school in the City of St. Louis. On the morning of September 15, D.M. had an altercation with a school security officer after she was asked to leave the building due to an outburst stemming from an administrator's demand that she remove a sweater that violated the dress code. The State, through the juvenile officer, filed a delinquency petition charging D.M. with assault while on school property. An adjudication and disposition hearing was held in October during which the following evidence was adduced.[1]

School Security Officer Roy Robinson was called to the Spanish wing of the school where D.M. was shouting obscenities at two school administrators. Robinson asked D.M. to leave the building through the nearest exit, about 20 feet away, but she refused, so he placed his hands on her shoulders to guide her toward the door. She resisted, and he persevered, pushing her toward the exit. When they arrived at the doorway, she threw up her hands and swung at him. Robinson pushed D.M. through the door and to the ground. He instructed her to turn over from her back to her front. She refused and grabbed, scratched, and kicked at him. He grabbed her by the hair to turn her over. Assistant Principal Steven Ayotte grabbed her legs, and Robinson was able to secure D.M. in handcuffs. They helped her sit upright. She continued to be belligerent and shout profanities. They called the police, and she was transported to juvenile detention. Robinson sustained scratches on his neck and arm in the incident and was treated with a tetanus shot. D.M. testified that she didn't mean to hit or kick Robinson and that he "choked [her] against the wall."

---

1. In addition to counsel and witnesses for the parties, the following professionals were present at the hearing: legal counsel for the school, the deputy juvenile officer, D.M.'s guardian and social worker from the Children's Division, her *guardian ad litem*, her CASA volunteer, and her educational advocacy attorney from Legal Services.

After the close of the evidence but prior to its formal adjudication, the court directed the following comments to school officials:

It's a double-edged sword when I know the kids. I know [D.M.], and [her] parents' rights were terminated when she was one year old. [D.M.] is in foster care ... I know that she's on medication. She's bipolar. She has seizures. And the problem with ... all these charter schools, they get these kids in school and they have no idea what they're dealing with. She has a behavioral IEP. The previous school she was in, she had over seventeen behavioral referrals. She had four suspensions. The kid's got some serious, serious problems. And you guys invite these kids into your school, and you don't know anything about them, and then you kick them out of the schools.... She has a behavioral IEP because I ordered it. And if [the school] doesn't have that behavioral IEP then we've got some problems. She had seventeen behavior referrals from the previous school.

[brief exchange with social worker about D.M.'s current placement]

Everything they said [D.M.] did, [she] did. There's no question about it. I know she cursed him out; I know she hit him; I know she kicked him. I know all of that stuff, that stuff she did. The problem that we have is that [the school] isn't prepared. And if you're going to invite these kids in there, you've got to be ready to handle them. If you don't know anything about the kids, you need to find out something about these kids, and that's the major problem with these charter schools.

Court: Did you curse that man out?

D.M.: No.

Court: That security guard?

D.M.: Yes. I told him to quit f'n touchin' me. I told him nicely.

Court: Did you push him? Hit him? Did you fight back?

D.M.: No, until he choked me.

Court: I didn't ask you that. Did you fight him back.

D.M.: No ... Yes.

Court: Don't lie to me.

D.M.: Yes, when he had me on the ground, yes.

Court: So everything you said you did, you did. I already know that.

D.M.: I didn't mean to scratch him.

Court: I know you didn't mean to scratch him.

After further inquiry and discussion with D.M.'s court-appointed and educational advocates, the court found beyond a reasonable doubt that D.M. committed the offense of assault while on school property. Proceeding to disposition, it ordered D.M. released from detention and returned to her previous residential school where she had been adjusting and performing well. The court also ordered educational, psychiatric, and psychological tests and placed D.M. on court supervision and under the guardianship of Children's Division. Throughout the post-trial transcript, the court repeatedly admonished the school for its performance with respect to D.M.

D.M. now appeals the judgment, asserting that the trial court erred by relying on inadmissible propensity evidence from her abuse and neglect file to find that she committed the charged offense (point I). D.M. further asserts that, absent such evidence, the record is insufficient to prove the charge beyond a reasonable doubt (point II).

## Discussion

### I. *Propensity Evidence*

 D.M. essentially contends that the trial judge improperly relied on his knowledge of her past conduct to infer that she behaved similarly this time. Counsel for D.M. did not object to the trial court's references to D.M.'s abuse and neglect file during the hearing, so this issue was not properly preserved for appellate review, and D.M. requests plain error review under Rule 84.13. Juvenile proceedings are in the nature of civil proceedings such that the plain error review applicable to civil cases applies. *In re N.J.*, 343 S.W.3d 362, 365 (Mo.App.2011). Rule 84.13, governing appellate review of civil cases tried without a jury, states: "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). Plain error review requires a two-step analysis. First, we determine whether a plain error affecting substantial rights has occurred. Plain error is error that is evident, obvious, and clear. *In re R.S.L.*, 241 S.W.3d 346 (Mo.App.2007). If we find plain error on the face of the claim, then we determine whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id.*

 The Missouri Constitution guarantees a criminal defendant the right to be tried only on the offense charged. Mo. Const. art. I, §§ 17 and 18(a). *State v. Burns*, 978 S.W.2d 759, 760 (Mo. banc 1998). The admission of evidence of uncharged crimes, when not properly related to the cause on trial, violates a defendant's right to be tried for the offense charged because it amounts to trying the defendant for crimes not designated in the indictment. *Id.* Thus, the general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is not admissible to show the defendant's propensity to commit such crimes. *Id.* at 761. See also *State v. Vorhees*, 248 S.W.3d 585, 587–588 (Mo. banc 2008). Evidence of a separate offense must have some tendency to prove the charge in the indictment. *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992). It is admissible only if it has some logical connection with the offense to be proven. *Id.* It is not admissible to prove that, if a person will commit one offense, she will commit another. *Id.*

 Simply put, due process prohibits the use of propensity evidence to determine guilt. Despite the practical realities of Missouri's "one family—one judge" statutory framework for juvenile proceedings, the law remains that these constitutional due process protections apply and must be respected. *T.S.G v. Juvenile Officer*, 322 S.W.3d 145, 149 (Mo.App.2010), citing *In re Gault*, 387 U.S. 1, 30–31, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (delinquency hearings must measure up to the essentials of due process and fair treatment); Rule 116.02 (the rules of evidence shall apply in adjudication proceedings). In the instant case, D.M.'s behavioral and disciplinary history was propensity evidence and thus inadmissible in the adjudication phase of the hearing.[2]

 Ordinarily, in a bench-tried case, we presume that the trial judge was not influenced by inadmissible evidence unless it is clear from the record that the judge considered and relied upon it. *State*

---

**2.** D.M. does not dispute that the court may consider information from her abuse and ne-
glect file for purposes of disposition.

v. *Ernst*, 164 S.W.3d 70, 74–75 (Mo.App. 2005). When it is obvious from the record that a trial court relied on improper evidence in reaching its decision, the admission of that evidence is prejudicial and necessitates reversal. *Sladek*, 835 S.W.2d at 313. However, "[a]bsent some showing that the evidence inflamed the fact-finder or diverted its attention from the issues to be resolved, the receipt of evidence even though irrelevant and immaterial cannot constitute prejudicial or reversible error." *Ernst*, 164 S.W.3d at 75. The test is whether the prejudicial improper admission was outcome-determinative. *Id.* This court will reverse "only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* Importantly here, even assuming that the trial court did actually rely on D.M.'s history in reaching its delinquency adjudication, on plain error review under Rule 84.13 our ultimate determination hinges on whether the trial court's error resulted in manifest injustice or a miscarriage of justice.

While juvenile courts must be mindful of constitutional principles in adjudication proceedings, in this particular case we are not persuaded that the judge cited D.M.'s behavioral history for the purpose of supporting his factual finding on the charged offense. Rather, as the record demonstrates, the court referred to D.M.'s history in the context of a general criticism directed at school officials, admonishing them for their poor service to this student (and others) and seeking to improve the coordination of services on her behalf. The judge was clearly displeased with the school and dedicated to serving the best interests of D.M., as illustrated from the court's favorable disposition. Moreover, as discussed in point II below, the State presented ample competent evidence to support the adjudication. On this record, we cannot say that any trial court error was outcome-determinative or that D.M. was deprived of a fair trial. In short, we find no manifest injustice or miscarriage of justice here. Point I is denied.

## II. *Sufficiency of the Evidence*

For point II, D.M. contends that, absent the inadmissible evidence from her abuse and neglect file, the record is insufficient to support a finding that she committed the offense. This issue was properly preserved, and juvenile proceedings are reviewed under the same standard as any other court tried case. *In re J.A.H.*, 293 S.W.3d 116, 119 (Mo.App.2009). We will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* citing *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). In determining whether sufficient evidence has been presented to sustain an adjudication in a juvenile proceeding, the trial court's decision must be given the same deference as it would be given in an adult criminal proceeding. *A.S.B. v. Juvenile Officer*, 842 S.W.2d 234, 236 (Mo.App.1992). This court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the verdict, and ignores all evidence and inferences to the contrary. *Id.* Issues of witness credibility are within the purview of the trial court, and the trial court may believe part, all, or none of any witness's testimony. *Id.*

D.M. was charged with the offense of assault while on school property, requiring the State to prove beyond a reasonable doubt that she "knowingly caused physical injury" to Officer Robinson. § 565.075. A person acts "knowingly" with respect to a result of her conduct when she is aware that her conduct is "practically certain to cause that result." § 562.016.3. D.M. contends that the State failed to es-

tablish the element of knowledge in that the trial court believed her testimony that she "got handled" by Robinson and didn't mean to scratch him. She asserts that these findings preclude a conclusion that D.M. knowingly caused injury to Robinson.

However, a review of the entire record reveals the following additional evidence. Robinson testified that D.M. threw her hands up and took a swing at him, grabbed him, scratched him, and kicked at him. It took a second man, Assistant Principal Ayotte, to get her legs under control. Ayotte, too, testified that D.M. was flailing and kicking and swinging her arms at Robinson. The record suggests that the trial court found these witnesses credible. Finally, D.M. admitted that she "fought back" against Robinson. Viewing this evidence in the light most favorable to the judgment and disregarding evidence to the contrary, a fact-finder could reasonably infer that D.M. knew that her actions would result in injury to Robinson. In short, the record is sufficient to survive our standard of review. Point II is denied.

## Conclusion

The trial court's judgment is affirmed.

ROY L. RICHTER and GARY M. GAERTNER, JR., JJ., concur.