In the
 Missouri Court of Appeals
 Western District

 
 IN THE INTEREST OF: R.M., 
 
 Appellant,  WD83769
 v.  OPINION FILED:
 
 JUVENILE OFFICER,  JUNE 29, 2021
 
 Respondent. 
 
 

 Appeal from the Circuit Court of Buchanan County, Missouri
 The Honorable Daniel F. Kellogg, Judge

 Before Division Three: Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge,
 Anthony Rex Gabbert, Judge

 R.M. appeals the circuit court’s judgment which found that R.M. committed, what would

be if he were an adult, the class A misdemeanor of harassment in the second degree pursuant to

Section 565.091.1 On appeal, R.M. contends that the circuit court, 1) erred in finding R.M.

committed harassment in the second degree because there was insufficient evidence to support that

finding, 2) erred in finding R.M. committed harassment in the second degree because Section

565.091, read in conjunction with the definition of “emotional distress” in Section 565.002, is void

for vagueness, and 3) plainly erred in allowing the motion to modify hearing to proceed without

 1
 All statutory references are to the Revised Statutes of Missouri as updated through 2019, unless otherwise
noted.
R.M. being present in the courtroom, arguing that his video hearing was constitutionally

impermissible. We reverse.

 Factual and Procedural Background

 On January 21, 2020, the Buchanan County Juvenile Office filed a Motion to Modify

Previous Order of Disposition regarding fifteen-year-old R.M. which contained the following,

labeled “COUNT I”:

 The Juvenile Officer of Buchanan County, State of Missouri, charges that the
 juvenile, in violation of Section 565.091, RSMo., committed the class A
 misdemeanor of harassment in the second degree, if committed by an adult, in that
 on or about January 20, 2020, in the County of Buchanan, State of Missouri, the
 juvenile made sexually explicit comments about Taylor Anderson, and the juvenile
 did so without good cause, and with the purpose to cause emotional distress to
 Taylor Anderson.

 The facts elicited in R.M.’s adjudication hearing show that R.M. was a resident at

Buchanan County Academy (“Academy”) because the juvenile court had previously committed

him there. Taylor Anderson worked as a detention aide at the Academy. Anderson testified that

her duties as a detention aide included ensuring the safety and well-being of in-house resident

juveniles, keeping the residents “in line with the programs,” assisting them in “working on what

they need to work on,” and “also being there to support them.” During the evening of January 20,

2020, Anderson was in the girls’ dorm at the Academy when fellow detention aide, Mr. Fleck,

called Anderson to assist with R.M. R.M. had positioned himself on some stairs such that his legs

were dangling off the staircase. R.M. was refusing to comply with requests to get down, and there

were concerns for his safety if he were to fall. Fleck called Anderson to help “talk him off” of the

stairs or physically remove him from the stairs.

 When Anderson arrived, R.M. was saying things like, “No one cares about me, I’m a piece

of shit.” Anderson told him that she cared about him and could see potential in him. R.M.

 2
responded, “Why is this bitch talking to me? I don’t care what she has to say.” As Fleck and

Anderson continued to try to talk R.M. off the stairs, he continued to call Anderson a “bitch,” and

told them to stop talking to him. Fleck warned R.M. that, if he did not get off the stairs, they were

going to remove him. When R.M. continued to refuse, Fleck advised R.M. that they were going

to physically remove him and began attempting to do so. Fleck was able to get R.M.’s torso and

most of his body off the stairs, at which point R.M. got down on the floor and wrapped his feet

around the stair railing. Anderson then removed her mace from her pocket. R.M. pulled his shirt

over his eyes and said, “If that fucking bitch maces me, I’m going to put my hands on her.”

Anderson kept her mace out, and tried to get R.M. off the floor.

 After about five to seven minutes, R.M. finally stood up. R.M. told Anderson, “You’re

lucky you didn’t mace me or you would have had hands put on you.” R.M. then ran down to the

other end of the hall; he went down the stairs to the lowest level, and sat on the stairs. Fleck and

Anderson continued to speak to R.M., saying such things as, “Hey, there’s potential in you. You

can turn around from this. This night’s been crap, but we can make it better.” R.M. responded

with, “Fuck you bitch” and “They can all eat a dick die [sic].”

 Anderson needed to check on other residents, so she temporarily left the area. When she

returned to check on Fleck and R.M., R.M. was banging his head on a door window. Anderson

testified that this was something R.M. did a lot. Anderson asked Fleck if he needed Anderson to

intervene, and Fleck responded that he had it under control and could handle it from there. As

Anderson began to walk away, she heard R.M. say, “I wanna fuck you in your big booty, bitch.”

Anderson turned around and replied, “Absolutely not. You will not talk about me that way.” She

had no doubt in her mind that R.M. was directing the comment at her. R.M. responded, “Don’t

press sexual harassment charges on me.”

 3
 The Juvenile Office charged R.M. with a violation of Section 565.091 specifically in that

he had “made sexually explicit comments about Anderson, and the juvenile did so without good

cause, and with the purpose to cause emotional distress to . . . Anderson.” Accordingly, the final

statement R.M. made as Anderson walked away with Fleck in control is at issue here.

 Anderson testified at trial that she felt disrespected and violated by the comment, that she

did not deserve to be talked to that way, “a little bit of disgust with all of it,” so, “not good.” She

had never had a resident say sexually explicit things to her in the two months she had worked at

the Academy, nor had anyone done so at her previous employment with the Division of Youth

Services. Anderson believed that R.M. “was not in the right state of mind that night, something

had triggered his behavior.” When asked on cross-examination if Anderson believed that R.M.

was intending to physically harm her, Anderson stated that the thought crossed her mind when she

pulled out her mace and R.M. said, “I’m going to put my hands on you if you mace me.” When

asked, “What about after that?”, Anderson responded that she has learned that “you can’t predict

what teenagers are going to do. And so, yes, that thought is always in my mind.” When asked if

she thought he was going to sexually assault her, Anderson responded that she could not work in

detention after that because R.M. was a resident there, and due to the unpredictability of teenagers,

“when he made these sexual comments at me, yeah, I’m a little afraid of what he could do.” When

asked if she believed at that particular moment he was going to sexually assault her she stated, “I

don’t know.” She later testified that, at that moment, it would be fair to say that she did not feel

she was in any imminent danger, only “emotional.”

 At the conclusion of Anderson’s testimony, the Juvenile Office rested its case. R.M.

presented no evidence. Both sides presented arguments supporting their respective positions. The

Juvenile Office argued that the elements for harassment do not require the alleged victim to feel

 4
or be placed in imminent danger. The Office erroneously added that the elements “do require for

her to have suffered emotional distress,”2 with the statute defining “emotional distress as

something markedly greater than the level of uneasiness, nervousness, unhappiness or the like,

which are commonly experienced in day-to-day living.” The Juvenile Office argued that the

element of emotional distress was proven through Anderson’s testimony.

 R.M.’s counsel argued that, although R.M.’s words were inappropriate and should not be

excused, the issue came down to whether R.M.’s words constituted an offense under the

harassment statute. Defense counsel cited State v. Vaughn, 366 S.W.3d 513 (Mo. banc 2012), and

after discussing various aspects of that case, concluded:

 So this case, in my view, narrows the statute to cover very specific – several
 actions that I don’t think is present here. Essentially, we have somebody who is
 mouthing off to staff and makes some, granted, very inappropriate comments to one
 of the staff members, but as she testified, she did not feel that she was in any
 immediate danger.

 She didn’t feel like he was going to attack her at that moment. She didn’t
 feel like he was going to act on these statements. He was simply, again,
 inappropriately, expressing what he was thinking, even if it was in a very unstable
 state of mind at the time.

 So I would argue that the words that he used, given that they weren’t I am
 going to do anything or I will do something, it was ‘I want to’ do something, I don’t
 think that falls under the purview of the statute. I don’t think it’s the kind of words
 that inherently intend to inflict injury or provoke violence.

 After hearing the evidence and reviewing Vaughn, the court concluded that the

unconstitutional argument made in Vaughn did not apply, and that R.M.’s comments fit within the

purview of the statute. The court stated that it understood defense counsel’s argument, but found

“that applies more to the other part of the harassment statute or the previous harassment statute,

and not to this part of the statute.” The court further found that the statute was not

 2
 The harassment statute R.M. was charged under, Section 565.091, does not require that emotional distress
result, only that emotional distress was intended by the actor.

 5
unconstitutionally vague. The court stated that, “understanding good cause, the issue is, was the

definition of emotional distress markedly greater than the level of uneasiness, nervousness,

unhappiness or the like which are commonly experienced in day-to-day living.”

 The court found the facts as alleged by the Juvenile Office to be true, and assumed

jurisdiction over R.M. A dispositional hearing was held immediately thereafter, and R.M. was

committed to the Division of Youth Services as recommended by the Juvenile Office. This appeal

follows.

 Point I – Sufficiency of the Evidence

 In his first point on appeal, R.M. contends that the circuit court erred in finding that he

committed second-degree harassment pursuant to Section 565.091, arguing there was insufficient

evidence to support that he acted with the purpose to cause emotional distress to Anderson when

he made the sexually explicit comment. He argues that the evidence did not prove that it was his

conscious object to cause her emotional distress, which must be something markedly greater than

the level commonly experienced in day-to-day living by a detention aide.

 “In determining whether sufficient evidence has been presented to sustain an adjudication

in a juvenile proceeding, the trial court’s decision must be given the same deference as it would

be given in an adult criminal proceeding.” In re D.M., 370 S.W.3d 917, 922 (Mo. App. 2012)

(superseded on other grounds). We view the evidence and reasonable inferences drawn therefrom

in the light most favorable to the judgment, and ignore all evidence and inferences to the contrary.

Id. When examining a sufficiency challenge, we consider only the legal question of “whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt.” State v. Zetina-

Torres, 482 S.W.3d 801, 809 (Mo. banc 2016) (internal citations and quotation marks omitted).

 6
 R.M. was charged under Section 565.091.1 which provides that, “[a] person commits the

offense of harassment in the second degree if he or she, without good cause, engages in any act

with the purpose to cause emotional distress to another person.” The offense, therefore, contains

the following elements: 1) to engage in any act, 2) with the purpose to cause emotional distress to

another person, 3) without good cause. R.M.’s first point focuses on the “purpose to cause

emotional distress” element. Section 565.002(7) defines “emotional distress” as “something

markedly greater than the level of uneasiness, nervousness, unhappiness, or the like with are

commonly experienced in day-to-day living.” And that emotional distress must be considerable

or substantial to a reasonable person. See Wallace v. Van Pelt, 969 S.W.2d 380, 386 (Mo. App.

W.D. 1998) (addressing meaning of “substantial emotional distress” in the stalking provision of

the Adult Abuse Act). In Vaughn, the Missouri Supreme Court held that due to constitutional

considerations a predecessor statute would be interpreted to apply only to acts ‘that cause

immediate substantial … emotional distress,’ meaning ‘the sort of acts that inherently tend to

inflict injury or provoke violence.’ 366 S.W.3d at 521.

 The circumstances here involve a sexually explicit comment made to a detention aide by a

fifteen-year-old juvenile confined in a juvenile detention facility. The comment was made after

the juvenile refused to comply with orders and was being physically removed from a staircase and

made along with a number of other comments showing the teenager’s disrespect for the aide. R.M.,

a troubled adolescent, was “acting out” in a way that communicated his disrespect for the aide but

did not demonstrate the purpose to cause emotional distress to her.

 This is not to say that words of this ilk can never rise to the level of harassment under

Section 565.091, but under the circumstances present here, and even viewing the evidence in the

 7
light most favorable to the prosecution, we conclude that the circuit court erred in finding that the

“purpose” element of the statute was proven beyond a reasonable doubt.

 R.M.’s first point on appeal is granted.

 Conclusion

 Because the Juvenile Office failed to meet its burden of proof, the judgment of the circuit

court is reversed, and R.M. is ordered discharged from the effects of the disposition associated

with the harassment charge.3

 Anthony Rex Gabbert, Judge

All concur.

 3
 Because there was insufficient evidence to support the “purpose” element of Section 565.091, requiring
reversal of the court’s judgment, we need not address whether there was sufficient evidence to support the statute’s
other elements; likewise, we need not address R.M.’s second and third points on appeal.

 8